370 So.2d 809 (1979)
ARVIDA CORPORATION, a Delaware Corporation, Appellant,
v.
A. J. INDUSTRIES, INC., Etc., et al., Appellees.
No. 77-1077.
District Court of Appeal of Florida, Fourth District.
April 18, 1979.
Carey M. Fischer of Ferrero, Middlebrooks & Strickland, Fort Lauderdale, for appellant.
Martin J. Sperry of Carey, Dwyer, Cole, Selwood & Bernard, Fort Lauderdale, for appellees.
*810 PER CURIAM.
AFFIRMED.
DOWNEY, C.J., and BERANEK, J., concur.
BAKER, JOSEPH P., Associate Judge, concurs with opinion.
BAKER, JOSEPH P., Associate Judge, concurring specially.
Call this the case of Arvida's bathrooms. The plot is rather simple as far as whodunits go. Arvida's complaint stated that after it had completed one of its real estate developments it discovered that the bathtubs and other customary items of bathroom furniture had become discolored, spotted, cracked and gaps appeared between the fixtures and the walls.
Arvida accused the corporations who had parts in either manufacturing or selling of the purchased bathroom necessities. In its complaint Arvida charged these corporations with responsibility for its mottled bathrooms by reason of breach of contract, negligence, strict liability as well as breaches of express and implied warranties under Florida's version of the Uniform Commercial Code.
Arvida also suspected another, namely, Porcelite Services, which was the company hired by Arvida to repair the bathroom equippage, but Porcelite bungled the job, according to Arvida's complaint. Porcelite was sued in four counts and moved to dismiss all of them. The two counts sounding in breach of contract and negligence were sustained by the trial court. But the two counts in which Arvida charged breach of implied and express warranties were dismissed for failing to state a cause of action, and from that dismissal this appeal was taken by Arvida.
Arvida argues that there is no important difference in commerce between a sale of goods and a sale of services, and, ergo, sales of services, such as repairs, should carry with them the same warranties as sales of goods. Arvida cites cases involving food services[1], tonsorial treatment[2], sales of new condominiums (realty)[3] and sales of electricity[4] where the plaintiffs were damaged and received compensation in court actions based on implied warranties. Arvida says these recoveries where no "goods" were involved provide support by analogy for extending to repair work the same warranties that apply to sales of goods. (§ 672.314, Fla. Stat.)
One way to accomplish what Arvida wants is to see if anything that would pass for "goods" was involved in the transaction. Under careful enough examination some parts or materials can nearly always be found that were used in making repairs, and these parts or materials could be held to qualify that transaction as a "sale of goods". This requires saying that the services are incidental to the goods used, regardless of whether the cost of the "goods" and the importance of the "goods" were small compared to the labor in making the repairs. This is hardly commendable detective work in uncovering the truly guilty party because it simply obliterates the distinction between sales of goods and sales of services.[5]
*811 No doubt seals, caulking, screws, nuts, bolts or pipe were used in its efforts at repair by Porcelite, but if there ever was a repair as distinct from a sale of goods, it would be repairs of the bathroom equipment that had been installed as fixtures in Arvida's buildings when Porcelite came into the story.[6] It does not make sense to say that Porcelite was hired to sell Arvida seals, caulking, screws and whatever else it used in attempting repairs.
A repairer such as Porcelite is not a seller, but it may be a "merchant" because "by [its] occupation [it] holds [itself] out as having knowledge or skill peculiar to the practices or goods involved in that transaction". (§ 672.2-104, Fla. Stat.) It must be assumed for purposes of testing Arvida's complaint that appellee held itself out as having special knowledge and skill in repairing bathrooms, or it wouldn't have been hired by Arvida. Assuming that there was no sale of goods, then, what is the reluctance to impose Code warranties on repairmen either by application of the Code to all service that required use of some product, or by analogy to the Code in sales of services? To answer that question, it must first be observed that Arvida sued the repairman for breach of warranties because of the stricter nature of liability in warranty actions; that is, no proof of fault is required nor is a proof of a breach of a promise. Warranty actions under the Code are in the same family with strict tort liability cases.[7]
To agree with Arvida and impose implied warranties akin to those for a sale of goods on Porcelite's repair work would relieve Arvida of having to prove up its counts alleging negligence and breach of contract, and another consequence would be that all of the suspects, all of the defendants, would be held equally responsible regardless of their participation. Imposing the same liability on the manufacturer of a product and the repairman of that product is to impose the same liability for not only different, but unrelated activities. Furthermore, imposing the same liability on the manufacturer and the repairman ignores the wide difference in the compensation received by the manufacturer and retailer compared to the repairman and apparently would allow the same remedies and same recovery against both.
Assuming the complaint to be true, it is quite clear that it was the manufacturer "who done it" to Arivda in a special and primary sense. Unless the equipment was defective and the defects obvious, there would be no reason for Porcelite to be hired to make repairs. The pleadings negate any circumstances that would indicate that the bathroom equipment was to be rebuilt by Porcelite such that it would be described as renewed equipment after Porcelite finished with it.
The repairman and the manufacturer can't both have created the same problem, and if they can't be at fault in the same way for the wrong complained about by plaintiff, why should they be liable in the same way for the same amount?[8] They *812 shouldn't, and the evidence against the repairman should relate to his negligence or breach of promise. Implied warranties are limited to sales of goods.[9]
I concur with the trial judge's assessment of "who done what" that led him to dismiss the counts alleging breach of implied and express warranties against Porcelite. And isn't it nice to have a mystery story that not only comes to the right conclusion but the one that was expected?
NOTES
[1] Cliett v. Lauderdale Biltmore Corp., 39 So.2d 476 (Fla. 1949).
[2] Newmark v. Gimbel's Inc., 102 N.J. Super. 279, 246 A.2d 11 (1968).
[3] Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972) affm. 264 So.2d 418 (Fla. 1972). The measure of damages in this case, which involved defective air conditioning that had become a fixture in the real estate, was the cost of the repairs.
[4] Insurance Company of North America v. Radiant Electric Company, 55 Mich. App. 410, 222 N.W.2d 323 (1972) and Buckeye Union Fire Insurance Company v. Detroit Edison Company, 38 Mich. App. 325, 196 N.W.2d 316 (1972).
[5] "Services" and "repairs" are not synonyms. Arvida's claim against Procelite arose out of "repairs". The allegations against the repair company are not argued by Arvida to come within § 672.314, Fla. Stat., because it was not alleged to be a "goods" transaction. Therefore, this case is one of "services" on the pleadings.

Since "services" includes lawyering and doctoring and other professions, the introduction of implied warranties in service transactions would impose standards on human beings, rather than on their artifacts. Conceivably all sorts of personal performances for hire could be subjected to judicial testing as to whether they met the implied warranty of "merchantability" or whatever else it is that is impliedly warranted.
[6] See note # 3, above.
[7] As noted in the opinion Arvida included a count alleging "strict liability" against each of the other defendants. Presumably this "strict liability" theory is the one announced in West v. Caterpillar Tractor Company, Inc., 336 So.2d 80 (Fla. 1976). Arvida and Porcelite Services were in privity, and "strict liability" was not necessary for Arvida to recover against Porcelite where "strict liability" may have been helpful against some of the corporations who manufactured the equipment.

If implied warranties were judicially created for repairs or for services generally, a question remaining to be decided would be whether "strict liability" applies to the new implied warranties on services. That is not an easy question to answer.
Limiting the class of claimants to those who are in privity with the one rendering the services may be justified where it is not in the manufacture and distribution of goods.
[8] The damages sought by Arvida are for economic losses. However, property damages and personal injuries could be claimed on the theory of implied warranty advanced by Arvida against a repairman or other person rendering services.
[9] A discussion of this question of implied warranties for services is to be found in J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code (1972), especially pertinent being §§ 9-6 through 9-8.