Carleton R. SMITH

v.

URETHANE INSTALLATIONS, INC.

Supreme Judicial Court of Maine.

Argued May 7, 1985.

Decided May 31, 1985.

---

Twitchell, Linscott & Badger, Frederick J. Badger, Jr., Michael L. Rair (orally), Bangor, for plaintiff.

Vafiades, Brountas & Kominsky, Susan R. Kominsky (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

WATHEN, Justice.

Defendant Urethane Installations, Inc., appeals from a judgment of the District Court (Bangor), affirmed by the Superior Court (Penobscot County), awarding dam-

ages in the sum of $7,500 to plaintiff Carleton R. Smith. On appeal defendant asserts that plaintiff's claim is barred by the statute of limitations, that the District Court employed an inappropriate measure of damages, and that there is insufficient evidence to support the damage award. We reject the first two contentions; however, we find the amount of the damage award to be unsupported by the evidence. We vacate the award and order a new trial solely on the issue of damages.

## I.

The facts developed at trial may be summarized as follows: In March 1976, Carleton Smith purchased a large farmhouse on 27 acres in Alton, Maine, for the sum of $25,000. In August of that same year, he met with a representative of Urethane Installations, Inc., to discuss insulating his home. The parties entered into a contract calling for defendant to insulate all of the vertical walls and slant ceilings in the farmhouse for a total payment of $951. The insulation was to be accomplished by injecting a foam material known as urea-formaldehyde. The job was completed in four days in November, and plaintiff paid in full on December 4, 1976.

The following Spring, plaintiff noticed excessive shrinkage in the foam insulation between the studs in the upstairs portion of his house. Defendant's representative was called and after surveying the problem, he suggested that the insulation "musta been a bad batch," and noted "the only thing I know of to do is take it out and do it over again." Thereafter, defendant replaced the defective insulation in part of the upstairs portion of the house.

In the course of remodeling in July of 1980, Smith discovered excess shrinkage in this second batch of insulation.

In response to a call, the president of Urethane, Kenneth Niznik, inspected the work, agreed it was unsatisfactory, and suggested possible remedies: (1) to refund Smith's money, (2) to inject additional wood fiber or urea-formaldehyde in beside the shrunken, defective insulation, or (3) to remove the clapboards from the outside, rake out all the defective insulation, and begin again. Smith obtained estimates from two other insulation companies as to the cost of repair. Urethane protested that these estimates were too high, and the company refused to do the work itself because it lacked the time and money.

On February 2, 1981, plaintiff filed a six-count complaint alleging that defendant supplied and installed defective insulation. One of the counts was dismissed on jurisdictional grounds, and three of the counts were dismissed as barred by the four-year statute of limitations applicable to actions brought under the sales provisions of the Uniform Commercial Code (11 M.R.S.A. § 2–725 (1964)). The remaining counts alleging breach of contract and negligence were tried and resulted in judgment for the plaintiff in the sum of $7,500. From this judgment, defendant appeals.

## II.

■ Initially defendant argues that plaintiff's claim for breach of contract is barred by 11 M.R.S.A. § 2–725. Defendant considers the contract to be one for the sale of goods and therefore controlled by the shorter limitation period of the Uniform Commercial Code. The transaction in question involves both the sale of goods and services. The District Court was called upon to determine whether the "predominant feature of the transaction" relates to goods or to services. *See, e.g., Arvida Corp. v. A.J. Industries, Inc.,* 370 So.2d 809 (Fla.App.1979); *Air Heaters, Inc. v. Johnson Electric, Inc.,* 258 N.W.2d 649 (N.D.1977). We conclude that the predominant feature of the subject contract is the provision of a service, namely, the insulation of a home. Our conclusion is supported by a number of factors. The contract contains no separate itemization for the materials to be furnished. The nature of the "goods", foam insulation, is difficult to conceptualize in the absence of installation. A major part of the contract price

would appear to be attributable to labor. The terms of the contract—"insulating all vertical walls and slant ceilings"—suggest that labor and service, rather than the insulation material, are the predominant features of this agreement. The District Court committed no error in declining to apply the shorter limitation provisions of the Uniform Commercial Code.

### III.

▇▇▇▇ Defendant next argues that the District Court erred in considering the amount reasonably required to remedy the defect in assessing damages. Defendant appears to contend that the District Court was required to confine itself to measuring the difference in value of the performance contracted for and the performance actually rendered. The District Court may employ either standard. *Parsons v. Beaulieu*, 429 A.2d 214, 217 (Me.1981). Before a party is entitled to damages on the basis of the amount reasonably required to remedy the defect, however, it must be demonstrated that the performance was so defective that recovery of this possibly greater sum is justified. *Parker v. Booth*, 446 A.2d 1124, 1125 (Me.1982). The District Court concluded:

> [T]hat the work that had been performed by the Defendant was so defective as to require that it be undone and the damages determined by the Court were based on the loss sustained by the Plaintiff plus the cost of removing the insulation that was installed by the Defendant and the cost of restoring the premises to its former condition.

The record adequately supports the District Court's determination that the cost of remedying the defect is the appropriate measure of damages.

### IV.

▇▇▇ The remaining point of dispute concerns the amount of the award. The District Court heard the testimony of two insulation contractors who stated that it would be necessary to remove all of the clapboards from the building in order to replace the insulation. New clapboards would then have to be installed. One contractor estimated the total cost to be $9,000 and the other estimated $12,425. Both contractors acknowledged that the cost of the new insulation would be small in comparison with the total job. Both contractors admitted to having little experience with the carpentry work involved in removing and replacing the clapboard siding and neither was able to state an estimated cost for that portion of the work. Kenneth Niznik, president of the defendant corporation, testified that both estimates were high and that the work should not cost more than 25 to 30 percent of the amounts estimated, a range running from approximately $2,250 to $3,800.

The District Court fixed damages in the amount of $7,500. The judge made the following findings of fact with regard to damages.

> Kenneth Niznik, agent for the Defendant, testified that it would cost Seven Thousand Five Hundred Dollars to insulate the Plaintiff's building as agreed.

This finding is clearly erroneous. The District Court mistakenly attributes testimony to Mr. Niznik that is not contained in the record. Because the damages awarded are substantial in comparison with the original cost of the house and the contract price of the services rendered by defendant, we are not persuaded that the erroneous finding constitutes harmless error. Defendant is entitled to a new trial solely on the issue of the amount of damages.

The entry is:

Judgment vacated.

Remanded for new trial solely on the amount of damages.

All concurring.