**LUCIEN BOURQUE, INC.**

v.

**Raymond E. CRONKITE.**

Supreme Judicial Court of Maine.

Argued March 7, 1989.

Decided March 30, 1989.

Robert N. Cyr (orally), Biddeford, for plaintiff.

Robert E. Mongue (orally), Coles & Mongue, Kennebunk, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

After a trial in the Superior Court (York County; *Perkins, J.*), the jury returned a special verdict finding defendant Raymond E. Cronkite liable to plaintiff Lucien Bourque, Inc. on a contract claim for excavation and construction work. On that verdict the presiding justice entered judgment against Cronkite for $17,624 remaining due to Bourque on the contract and added $25,-252.57 in interest and attorney fees. The additional amount was based on the justice's ruling that section 2–207(2) of the Uniform Commercial Code, 11 M.R.S.A. § 2–207(2) (1964), applies to this transaction and requires enforcement of the printed legend on all of Bourque's invoices imposing interest and attorney fees on past due accounts. On appeal Cronkite challenges that ruling. Because the contract between these parties was not predominantly one for the sale of goods, we con-

clude that the presiding justice erred in applying article 2 of the U.C.C. in this case. We therefore vacate that portion of the judgment awarding interest and attorney fees pursuant to section 2–207(2) of the U.C.C. We, however, remand the case for a determination whether Bourque is entitled to any part of that award as a matter of common law contract liability.

In 1981 Cronkite invited Lucien Bourque, Inc. to submit a bid for excavating and constructing a roadway at his development known as Winter Harbor Terrace at Biddeford Pool. Bourque submitted a bid in which, for the sum of $8,839.28, it proposed to do the following:

    cut trees and salvage;
    remove stumps and vegetation;
    strip loam and save for future use;
    level subgrade 50 feet wide and 550 feet long;
    furnish and place two culverts;
    cut and grade 700–foot drainage ditch on north side of property;
    cut and grade 250–foot drainage ditch on south side of property;
    loam, seed, fertilize, and cover with hay 950 feet of drainage ditch;
    place roadway gravel to meet specifications.

Cronkite accepted the bid and gave Bourque a down payment, agreeing to pay the remainder of the price after the second building lot was sold. In addition to building the roadway, Bourque also excavated for water and electric lines at Winter Harbor Terrace and did certain work for Cronkite at his home, including repair of a seawall and septic system, construction of a patio, removal of "demolition," cutting of trees, and building lawns. Bourque sent Cronkite over 30 invoices detailing the work done and the charges incurred. Each of those invoices contained the following legend on the first page:

FINANCE CHARGE OF 1 1/2 per month on all past due accounts which equals 18% ANNUAL INTEREST RATE plus collection and other misc. fees incurred by attorney actions.

Most of the charges on the invoices were for labor and equipment rental.

Bourque commenced this action in March of 1985 to collect an unpaid balance on his contract with Cronkite, plus interest and costs. In an amended complaint Bourque added a prayer for attorney fees in accordance with the invoice language.[1] The case was twice scheduled for jury trial in April and June of 1987, but both times Cronkite moved for protection from trial. The case was again put on the trial list for September, but on the day before trial Cronkite's counsel, who had represented him on this matter since March 9, 1985, moved to withdraw from the case. Simultaneously, new counsel entered an appearance and moved for a continuance, alleging that Cronkite wished to retain new counsel because of a breakdown in communication with counsel of record. Both the motion to withdraw and the motion to continue were denied and the trial commenced on September 3, 1987, with the original counsel present representing Cronkite.

Before the jury retired to deliberate, the parties stipulated that over $17,000 remained unpaid on the total invoice charges of over $30,000. The jury returned a special verdict finding Cronkite liable on the contract claim. Following the trial, the parties submitted to the presiding justice the question whether the provisions on Bourque's invoices imposing interest and attorney fees on past due accounts were enforceable because Cronkite, even though he did not expressly agree to be bound by them, did not object to the invoice terms. The justice determined that those terms were enforceable under section 2–207(2) of the U.C.C.[2] Pursuant to a bill of costs and

1. Cronkite counterclaimed, alleging that Bourque had improperly performed on their contract, but Bourque obtained a verdict in its favor on that counterclaim.

2. 11 M.R.S.A. § 2–207(2) (1964) provides:
    The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
    (a) The offer expressly limits acceptance to the terms of the offer;
    (b) They materially alter it; or

miscellaneous collection expenses filed by Bourque, the court entered judgment for Bourque as follows:

| | |
|---|---|
| Amount of original judgment | $17,624.00 |
| Total interest to 5/11/88 at 18% rate stated on invoices | 19,620.90 |
| Attorney fees | 4,910.00 |
| Miscellaneous expenses | 721.67 |
| Total | $42,876.57 |

Now before us on appeal, Cronkite challenges the denial of his motion to continue and the award of interest and attorney fees based on Bourque's invoices.

## I. *Motion to Continue*

■ We first dispose of Cronkite's contention that the presiding justice erred in denying the motion for a continuance that he filed the day before trial. The party seeking a trial continuance has the burden of showing sufficient grounds for granting the motion, and we will overturn the presiding justice's denial of such a continuance only for abuse of discretion. *See Farrell v. Theriault,* 464 A.2d 188, 191 (Me.1983). Cronkite demonstrates no abuse of discretion here. Under M.R.Civ.P. 40(b), a motion for continuance should be made not less than 4 days before trial, or as soon as practicable after the cause becomes known. The motion for continuance here was filed on the eve of trial by new counsel simultaneously with a motion to withdraw filed by prior counsel. But that motion to withdraw was denied, so that prior counsel remained and in fact fully participated in the trial. The alleged breakdown in attorney-client communications cannot without more be an adequate ground for a continuance sought only the day before the scheduled trial. Cronkite makes no showing of prejudice. It is further relevant that Cronkite had obtained protection against trial for two earlier periods of time. The presiding justice did not in any way abuse his discretion in denying the requested continuance.

## II. *Application of Article 2 of Uniform Commercial Code*

■ Cronkite contends, and we agree, that article 2 of the U.C.C., specifically

(c) Notification of objection to them has already been given or is given within a reason-

section 2–207(2), does not apply to this transaction. Section 2–102 of the U.C.C. provides that "[u]nless the context otherwise requires, this Article applies to transactions in goods...." 11 M.R.S.A. § 2–102 (1964). Goods are defined in relevant part as:

all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.

11 M.R.S.A. § 2–105(1) (1964). When as here the transaction involves provision of both goods and services, the question for application of the U.C.C. becomes whether as a factual matter the transaction predominantly relates to goods. *See Smith v. Urethane Installations, Inc.,* 492 A.2d 1266, 1268 (Me.1985).

In the case at bar the presiding justice implicitly found that the sale of goods predominated in the transaction between Bourque and Cronkite. On the record before him, the justice's finding was clearly erroneous. In *Smith v. Urethane Installations, Inc.,* 492 A.2d at 1268–69, holding that a contract for insulating a home was predominantly a service contract, we noted that:

The nature of the "goods," foam insulation, is difficult to conceptualize in the absence of installation. A major part of the contract price would appear to be attributable to labor. The terms of the contract—"insulating all vertical walls and slant ceilings"—suggest that labor and service, rather than the insulation material, are the predominant features of this agreement.

The facts here are analogous.

The initial contract between these parties was a contract to build a roadway. The parties later agreed that Bourque would also excavate for water and electric lines and perform certain work for Cronkite at

able time after notice of them is received.

his home. The major component of all this work, involving as it does primarily excavation, construction, and repair, is the provision of labor and equipment rental. As in *Smith*, the major part of the contract price is not attributable to goods. Moreover, the goods that were provided consisted mainly of sand, gravel, pipes, culverts, loam, grass seed, fertilizer, and hay. In the context of this case where the contract was to build a roadway, excavate for pipes, and do lawn and repair work at Cronkite's home, the nature of the goods provided is such that their value is difficult to conceptualize in the absence of the services that went along with them. For example, Cronkite contracted for the excavation and construction of a roadway; absent the labor and equipment used to clear, grade, and prepare the surface for that project, the sand and gravel would be of little value to Cronkite.

We conclude that the record before the presiding justice compelled the finding that the transaction between Bourque and Cronkite was not predominantly for the sale of goods.[3] We therefore vacate that portion of the judgment assessing interest and attorney fees pursuant to the U.C.C.

### III. *Common Law Liability*

■ We now turn to the question whether, notwithstanding the inapplicability of section 2–207(2) of the U.C.C., the invoice terms are enforceable as a matter of common law liability. Bourque argues that section 2–207(2) is merely a codification of the common law of contracts and that the judgment should be upheld on that alternative ground. We do not agree, but we nonetheless find it necessary to remand for a determination by the presiding justice whether any common law basis for Bourque's recovery of interest and attorney fees exists.

Generally speaking, "in order for any legally binding agreement to come into existence, the parties to it must have manifested their mutual assent to all of its material terms." *Sevigny v. Home Builders Ass'n of Maine, Inc.*, 429 A.2d 197, 202 (Me.1981). As the *Restatement* provides, however, in certain circumstances a contract may be implied even where the offeree does not expressly agree to its terms. *See Restatement (Second) of Contracts* § 69(1) (1981). That section provides:

(1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:

(a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.

(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.

(c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

It is apparent that section 69(1) is materially different from section 2–207(2) of the U.C.C. Section 69(1) sets out the exceptional circumstances under which terms can become part of a contract even though the offeree has not expressly agreed to them. *See Restatement (Second) of Contracts* § 69 comment a. Section 2–207(2), on the other hand, states the general rule that additional terms are construed as "proposals for addition to the contract" except in the case of contracts between merchants, where certain additional terms may become part of the contract under the conditions specified therein. Section 2–207(2) represents not a codification of the common law but rather a special rule developed for commercial transactions in goods between merchants.

---

**3.** Even if this transaction were predominantly for the sale of goods so that article 2 did apply, section 2–207(2)'s language incorporating additional terms into the parties' contract applies only to contracts between merchants. It is far from clear in the case at bar that the presiding justice was correct in implicitly finding that Cronkite, a real estate broker engaged in his first development project, was a merchant within the meaning of the U.C.C. *See* 11 M.R.S.A. § 2–104(1), (3) (1964).

Because the presiding justice concluded that the invoice terms became part of the parties' contract under the U.C.C., he did not address Bourque's alternative argument that those terms became part of the contract as a matter of common law. On the record before us we cannot make the necessary factual determinations. The case must be remanded for the presiding justice to decide whether interest and attorney fees are due in whole or any part on the unpaid balance under the principles stated in *Restatement* section 69(1). To make that decision the justice will have to determine whether the factual circumstances surrounding the work represented by each of the unpaid invoices brought that invoice within those principles. If the interest and attorney fees legend on any of the invoices is not enforceable by Bourque, a question will remain whether prejudgment interest is allowable under 14 M.R.S.A. § 1602 (Supp.1988).

The entry is:

That portion of the judgment awarding interest and attorney fees is vacated. Case remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.