STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-119

JODY NEWMAN,

Plaintiff

v.

MAINE INTERNETWORKS, INC.
(MINT),

Defendant

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

SEP 3 2002

This matter is before the court after bench trial. This action was initiated by plaintiff's six-count complaint alleging in count I - wrongful termination, count II - wrongful termination based on contravention of public policy, count III - breach of contract, count IV - conversion of domain name, count V - conversion of plaintiff's electronic mail, and count VI - conversion of plaintiff's personal property. Defendant's answer put the allegations in issue and provided a counterclaim of five counts including misrepresentation, infringement, violation of copyright, deceptive trade practices, conversion, unfair competition, and breach of contract. Prior to trial, plaintiff withdrew counts IV and V. At the conclusion of plaintiff's case, defendant moved for judgment on counts I, II, III, and VI. The court granted judgment to the defendant on counts I and II and denied judgment on count III - breach of contract, and count VI - conversion.

Plaintiff is a military veteran entitled to benefits of United States Veterans Administration law and benefits. Included within those laws is the Special Employers Incentives Program, 38 C.F.R. 21.256(a)(f) under Title 38 of the United States Code. Accordingly, the defendant and the Department of Veterans Affairs entered into a

contract for the benefit of the plaintiff. This contract included, among other things, the following paragraphs:

> The purpose of this contract is to provide a Work Experience for the veteran, Jody Newman, see #: 005 60 1304 under Ch. 31, Title 38 U.S.C.

> * * * *

> The Contractor certifies that the veteran, Jody Newman, will if s/he has satisfactorily completed the training provided, be continued as an employee after VA intervention is completed.

> * * * *

> Reimbursement for Direct Expenses relative to training is as specified on Schedule I attached.

Schedule I provided that the plaintiff was to work as a Website Developer for a period of six months with a starting date of May 3, 1999, and an ending date of November 3, 1999. The hourly wage was to be $10 at a monthly average number of 160 hours for a monthly rate of $1,600. The total wages were to be $9,600 with the maximum total reimbursement by the Veterans Administration of $4,800. In conjunction with that contract and Schedule I, defendant provided to the Veterans Administration in accordance with a request of the VA Rehabilitation Specialist of April 29, 1999, a job description indicating the position was to be entitled "Web Developer," that the plaintiff was to report to Bill Thornton - Production Director and that her primary responsibilities were "to design and implement web pages and to be responsible for the development and debugging of MINT and client websites. This includes programming in HTML, PGP, and JavaScript. Intermediate graphic abilities are required." This was followed by a five-paragraph listing of responsibilities and a four-paragraph listing of accountability. Finally, the job description listed 15 training

2

elements. It is agreed by all of the parties that the terms of this document were incorporated in and became a part of the contract.

In December of 1999, the plaintiff continued in her employment with the defendant in accordance with the contract. However, an incident arose between the plaintiff's supervisor and that person's supervisor concluding in a confrontation causing plaintiff to suffer such emotional distress that she advised the defendant that she needed to go home for the day. While it is disputed , defendant claimed, at one point, that plaintiff quit her employment, but the evidence seems clear that plaintiff simply wished to remove herself from emotional stress. However, before the day was over, she was advised by defendant that she was terminated and she was instructed not to return to her work station.[1]

In addition to plaintiff's testimony, she presented an expert and four witnesses from the workplace. Defendant presented seven witnesses from the workplace. While there were some significant differences in the conclusions and the observations of the witnesses, the court is satisfied that it has a rather thorough understanding of the circumstances under which the VA contract in question was implemented.

The contract called for both work experience and training. At the time of negotiation of the contract, it was understood by those directly involved that of the 40-hour work week approximately 20 hours per week would be dedicated to each of the two responsibilities. While it was understood that the plaintiff would be receiving some work experience while she was training and receiving some training while she was engaged in the work experience, it is clear there was a commitment on the part of the

---

[1] While there was substantial evidence relating to the conditions under which her employment was terminated, after granting judgment to the defendant on the wrongful termination counts, the analysis of those circumstances only relates to plaintiff's count for breach of contract and conversion.

defendant to dedicate one-half of her working hours to the primary objective of training the plaintiff. The purpose and function of the VA subsidy was to provide, in the veteran, increased capabilities to allow her to qualify for a position to which she aspired, that is, of a website developer.

In addition to the issues of the intent of the parties to this contract which are fundamental to a decision in this case, there also exists some issues as to what skills are necessary for a person to become qualified as a website developer. It would seem that the job description provided by the defendant and made part of the contract would describe the answer to that issue rather clearly but there was considerable disagreement and debate among all the witnesses as to what level of skills and understanding is contemplated in various training elements for qualification as a website developer and, more specifically, what level of education and training was anticipated in order to constitute satisfactory performance under the contract.

The plaintiff complains with some support from both her and defendant's witnesses she never really received the training required. She claims it had been represented to her that she would receive 20 hours per week of activities devoted solely to her training under the contract. While witnesses substantiated the obligation for 20 hours per week, they testified that the 20 hours per week was to include production work so that neither plaintiff's work experience nor the performance needs of the defendant were to be disregarded. To the extent there was an expectation of this dedication of 20 hours, it is clear that it never took place except for three or so occasions when a supervisor spent time with the plaintiff specifically dedicated to train and these were one hour sessions.

4

Plaintiff further complains that defendant's supervisors or other employees were to designate a time dedicated for her training. Some of defendant's employees indicated that the responsibility for training rested on plaintiff alone and that it was her duty to ask the questions during the course of the work day in order to learn.

To some extent, there was considerable agreement among all the witnesses as to the work environment. MINT was under consideration for or had already been purchased by Adelphia and it was a matter of time before the take-over would be complete. It was uncertain whether the website development department would be retained upon the purchase by Adelphia. It was the earnest desire on the part of MINT leadership to maximize the revenue-producing capabilities of the website development department in order to enhance the likelihood of its retention and job security of its employees for the future. No employee was motivated to reduce production performance when engaged in dedicated training of the plaintiff. Indeed, it is conceded that plaintiff possessed considerable skills as a graphic designer, skills required for her position at MINT and to be qualified for training as a website developer. [2] There has been no complaint of plaintiff's volume of production as a graphic designer. There were to be no examinations or practical exercises to evaluate the plaintiff to determine the level of her skills at the completion of the contract, in spite of the language in the contract committing the defendant to continue employment provided the plaintiff completed her training. Plaintiff did learn and acquire some additional skills while she was working for the defendant.

---

[2] . Defendant's production director complained that plaintiff did not possess the other skills she represented at the hiring. This would be relevant if this case were to be decided on a contract for a specific result, but such is not the case here. This contract promised work experience and training.

Plaintiff did complain to the defendant that she was not receiving the dedicated training she expected and representatives of the defendant did promise her that she would receive such training, i.e., 20 hours per week primarily focused on her education. Plaintiff did sign a reimbursement billing for the period May 3, 1999 to July 18, 1999, for defendant's reimbursement by the VA in the amount of $1,790. Defendant also signed a billing for reimbursement for the period July 19, 1999, to September 12, 1999, for reimbursement in the amount of $1,580. Plaintiff insists, and defendant appears to agree, that she signed the September 12, 1999 reimbursement claim after she protested of her lack of training and upon promise of the anticipated training by an authorized representative of the defendant. Plaintiff refused to sign the reimbursement request for September 13, 1999 through November 7, 1999, which is the subject of this counterclaim.

A decision in this case rests upon whether the defendant met its responsibilities under the job description it provided to the Veterans Administration and which was incorporated in the contract. If the defendant provided the training anticipated and the plaintiff completed that training, she was entitled to a continuation of employment to the extent the defendant had hired her to a web developer position. Unfortunately, she did not receive the training required under the contract and therefore could not meet the condition necessary for the contract to promise her continued employment. Therefore, the breach by defendant, by its own actions, prevents a breach for failure to continue employment.

There is no question that plaintiff received some training and that she acquired skills during her period of employment under the contract which she did not have when she was first hired. It is also clear that plaintiff did not receive training in

6

accordance with her prior responsibilities and training elements represented to her in the job description and, therefore, the contract. Everybody agrees the web development department worked at a very fast pace and attempted to maintain a high level of production. Plaintiff also worked at that pace in providing the graphic skills she had brought to the job site. It appears the defendant expected the plaintiff to learn complete development of websites including programming in HTML, PGP, and JavaScript from just doing it or from asking questions of other employees as she provided her production. It was suggested that she could learn HTML and other codes by herself but that obviously was not happening. This caused her to complain resulting in representations by defendant that there would be periods of time dedicated to her training to allow her to learn the production skills and training elements necessary to become a web developer. The court finds that it is more likely than not that it was not realistic to expect the plaintiff to learn most of the training elements without significant presentation, explanation and assistance from a knowledgeable web developer. Plaintiff knew that it was necessary for her to be able to write the code in order to develop the website. While she had the capability to use a code editing program, this would only a provide a nonfunctional website.

Plaintiff's entitlement under the Veterans Administration program involved in this transaction was a one time opportunity and cannot be used again. Defendant's continuous promises for one-half training time led plaintiff to see the contract through notwithstanding the possibility of an opportunity to rescind the contract and take advantage of the program with another employer upon early notice to the Veterans Administration.

7

Defendant complains that plaintiff's failure to approve and sign the third billing statement resulted in defendant suffering a monetary loss. The court is satisfied that plaintiff's approval of that billing statement in light of defendant's performance, or lack thereof, was not appropriate. Defendant suggests the plaintiff is trying to take advantage of the defendant by receiving payment for education and qualification over and above that contemplated under the contract. It could equally be said that the performance by the defendant was to take advantage of plaintiff's graphic skills, provide only one-half pay and expect the plaintiff to self-train with the other employees. Defendant argues that the plaintiff only contracted for work experience but any plain reading of the contract makes it clear that a level of training was clearly required of the defendant, particularly in the programming in codes. Defendant complains that plaintiff actually did develop some website while she was in its employ. To the extent the court is satisfied from the evidence that to the extent plaintiff completed a website, it was a nonfunctional website in that she was incapable of programming functions other than the simple website page itself. Defendant argues that plaintiff misrepresented her skills and her qualifications when she entered into the contract. To the extent plaintiff's understanding of skill level was not consistent and far less accomplished than defendant expected, the contract did not call for a specific result, it called for training leading to minimum skills and therefore the misrepresentation, if any, is of no avail to the defendant.

Defendant argues that its employees did spend some time training the plaintiff and the court agrees. The court also agrees that there were a number of skills and capabilities acquired by the plaintiff that she did not have at the outset. However, those fundamental skills and capabilities clearly spelled out in the job description and to which

8

there was a substantial amount of testimony requires at least a basic level of programming skills and the codes enumerated to allow plaintiff to become a website developer rather than remaining a website designer.

Count VI of plaintiff's complaint alleges that defendant has converted personal property of the plaintiff. When plaintiff left the job site and logged out of her computer on the morning of the confrontation between supervisors, she took nothing from her workstation. She even forgot to take her purse. During the course of employment under this contract, plaintiff had brought to her workstation a "track ball" mouse. This mouse, of particular value to a graphic designer, had the capability of moving the cursor by the use of a thumb wheel on its side. This mouse had been a gift to her from plaintiff's husband who bought it for "$40 or $50" in 1998. Plaintiff was terminated by the defendant before she could retrieve her personal belongings, including the track ball mouse and she was not allowed to return to her workstation for that purpose. Therefore, when she was terminated, her personal items came under the complete control and possession of the defendant. When plaintiff's personal possession were finally returned to her, the track ball mouse was not present.

The defendant argues that plaintiff has presented no evidence that defendant converted it to its own use. However, the defendant's refusal to allow the plaintiff to retrieve her belongings for a period of time sufficient for the court to assume that an object under defendant's control would have been disposed while under that control leaves it no conclusion other than the defendant had, in fact, converted that mouse to its own use.

The defendant has breached the contract by not providing the training promised both by the terms of the contract and the oral representations by her supervisors. Since

9

this was a contract for work experience and training providing the opportunity for plaintiff to learn skills as a website developer, there is no evidence of a definition of the level of skills contemplated by a successful completion of the contract. While plaintiff did develop some skills and knowledge she did not have prior to hiring, she also provided a benefit to the defendant in contributing her skills as a graphic designer. Plaintiff testified that there exists a training program for a tuition price of $9,185 which she understands would provide full website developer training. However, the plaintiff presented no evidence of the level of skill development available such as to allow the court to make a direct comparison between those tuition costs and the value of the training promised by the defendant. By the same token, she testified that she expected the full time employment opportunity of the 26 weeks for a total of $10,400 as damages. Finally, the plaintiff attempted to testify as to her expectations as to income of a fully qualified website developer acting as an independent contractor.

To what is plaintiff entitled as damages upon a finding by the court that the defendant has breached the contract? She is entitled to the benefit of her bargain, that is, what she would have received had the contract been fully performed by the defendant. "In a breach of contract case, the plaintiff's recovery may include damages for the contractual expectancy, expenses incurred, and any other loss within the contemplation of the parties when the contract was formed." MAINE CIVIL REMEDIES, Horton & McGehee, 1991, citing *Smith v. Urethane Installations, Inc.*, 492 A.2d 1266 (Me. 1985); *Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646 (Me. 1979); *Lawrence v. Cooke*, 56 Me 187 (1868).

Plaintiff was paid by defendant $10 an hour for 40 hours per week under a six-month contract.[3] For that $9,600, plaintiff was paid to provide graphic design services in the production of websites for the defendant and receive work experience in a website development environment. For that $9,600, defendant received the benefit of plaintiff's skills and provided a work experience. From the evidence presented, there is no precise allocation of the value of benefits received by plaintiff and the benefits received by the defendant so as to provide a set-off for the reasonable value of that which plaintiff would have received had defendant not breached the contract. However, there is a precise value of the benefit provided by the Veterans Administration to which the plaintiff was entitled. The contract between the Veterans Administration and MINT placed a value at $4,800 on the work experience and training plaintiff was to receive. Accordingly, the court finds that to be an appropriate measure of damages for defendant's breach. The defendant should be entitled to nothing on its counterclaim because of the breach. Plaintiff is entitled to a reasonable value of $40 for a one year old track ball mouse.

For all the reasons herein stated, the entry will be:

Judgment for plaintiff on count III of her complaint in the amount of $4,800; judgment for the plaintiff on count VI of her complaint for $40; judgment for the plaintiff on defendant's counterclaim; plaintiff to recover her costs.

Dated: July 7, 202

Donald H. Marden
Justice, Superior Court

---

[3] The total amount of the contract determined on a six-month basis is $9,600. Determined on a 26-week basis is $10,400. The contract specifically was limited to $9,600.

11

Date Filed __6/20/00__ __Kennebec__ Docket No. __CV00-119__
County

Action __Contract__

## J. MARDEN

Jody Newman vs. Maine Internetworks Inc.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Susan Farnsworth Esq & Jennifer Bryant, Esq.<br>PO Box 29<br>Hallowell Me 04347 | John P McVeigh Esq (7/3/00)<br>One City Center<br>PO Box 9546<br>Portland Me 04112 |

| Date of Entry | |
|---|---|
| 6/20/00 | Verified complaint filed. s/Farnsworth Esq<br>Original summons with return service on Main Internetworks Inc on 6/13/00 filed.<br>Case file notice card mailed to Atty. |
| 7/3/00 | Answer filed. s/McVeigh Esq |
| 7/5/00 | SCHEDULING ORDER, Marden, J.<br>"Scheduling Order filed. Discovery deadline is March 5, 2001."<br>Copies mailed to attys of record. |
| 7/27/00 | Plaintiff's Reply to Defendant's Counterclaim, filed. s/Farnsworth, Esq. |
| 10/6/00 | Designation of Expert Witness, filed. s/Farnsworth, Esq. |
| 10/10/00 | Designation of Expert Witness, filed. s/Farnsworth, Esq. |
| 12/7/00 | Defendant's Motion for Enlargement of Time to Designate Expert, filed. s/McVeigh, Esq.<br>Proposed Order, filed. |
| 12/13/00 | Notification of Discovery Service of Defendant's Designation of Experts served on Susan Farnsworth on 12/12/00, filed. s/John McVeigh, Esq. |
| 2/1/01 | Notification of Discovery Service of Plaintiff's Interrogatories & Requests for Production of Documents served on John McVeigh, Esq. on 1/31/01, filed. s/S. Farnworth, Esq. |
| 2/12/01 | ORDER ON DEFENDANT'S MOTION FOR ENLARGEMENT TO DESIGNATE EXPERT, MARDEN, J.<br>Copies mailed to attys of record. |
| 2/13/01 | Notification of Discovery Service of Interrogatories served on Susan Farnsworth, Esq. on 2/9/01, filed. s/J. McVeigh, Esq. |
| 3/7/01 | Defendant's Motion for Enlargement of Time to Conclude Discovery and Proposed Order, filed. w/J. McVeigh, Esq. |

| Date of Entry | |
|---|---|
| | Docket No. _____ |
| 3/12/01 | Notification of Discovery Service, filed. s/McVeigh, Esq. Answers to Interrogaotries Response to Request for Production of Documents served on Susan R Farnsworth, Esq on 3/9/01 |
| 3/27/01 | Notification of Discovery Service, filed. s/Farnsworth, Esq. Plaintiff's Answers to Interrogatories of Defendant served on John McVeigh, Esq. on 3/26/01. |
| 9/17/01 | ORDER FOR FAILURE TO FILE STATEMENT OF COUNSEL, Marden, J. Order for failure to file statement of counsel entered. Sanctions imposed. Copies mailed to attys of record. |
| 9/20/01 | Notice of Discovery Service, filed. s/Farnsworth, Esq. Plaintiff's Answers to Interrogatories; Plaintiff's Request for Admissions Plaintiff's Witness List and Plaintiff's Exhibit List served on John McVeigh, Esq. on 9/19/01 |
| -------- | Statement of Counsel, filed. s/Farnsworth, Esq. Estimated time for trial is 3 days. |
| 10/1/01 | Notification of Discovery Service of Objection to Request for Admissions served on Susan Farnsworth on 9/27/01, filed. s/J. McVeigh, Esq. |
| ------- | Objection to Request for Admissions, filed. s/J. McVeigh, Esq. |
| 11/27/01 | Letter by Susan Farnsworth entering the appearance of her associate, Jennifer Bryant, Esq. as Co-Counsel, filed. s/S. Farnsworth, Esq. (filed 11/26/01) |
| 1/22/02 | PRETRIAL ORDER, Marden, J. Rule 16(b) Pretrial Order entered. Copies mailed to attys of record. Notice of setting for 3/11-4/26/02 sent to attorneys of record. |
| 2/28/02 | Notice of setting of nonjury trial on 3/20/02 at 9:00 a.m. sent to attys of record. |
| 3/19/02 | Defendant's Motion in Limine Concerning Counts I,II, and III, filed. s/McVeigh, Esq. |
| 3/20/02 | Plaintiff's Trial Memo and Response to Defendant's Motion in Limine, filed. s/Farnsworth, Esq. |
| 3/26/02 | Non-jury trial with Hon. Justice Donald Marden, presiding. Trial held on 3/20/02. Timothy Thompson, CR Susan Farnsworth, Esq. for the Plaintiff and John McVeigh, Esq. for the Defendant. Plaintiff presents opening statements to the court. Defendant presents opening statements to the court. |
| | Plaintiff's exhibits and Defendant's exhibits admitted by stipulation. Plaintiff's #1-17, Defendant's 1-1-,12-17,19-25,28-30,32-34 (see attached list) |
| | Plaintiff calls Jody Newman as a witness. Defendant calls Michael Keimel as witness out of order. Case recesses at 4:00 p.m. to resume at 9:00 on 3/21/01. |
| | Case resumes at 9:25 a.m. on 3/21/02 with Hon. Justice Donald Marden, presiding. |

| Date of Entry | Jody Newman vs. Maine Internetworks, Inc. Docket No. CV00-119 |
|---|---|
| ------- | Deft. Motion in Limine is DENIED. Court to defer as to Motion to Dismiss. Parties agree to withdraw counterclaims 1-4, #5 remains.

Plaintiff calls Jessica Cates, Darrin Cates, and Mary Going as witnesses. Defendant calls Alisa Keimel as a witness out of order.

Trial recesses at 3:50 p.m. to resume at 9:00 a.m. on 3/22/02

Trial resumes at 12:00 noon on 3/22 with Hon. Justice Donald Marden, presiding.
Plaintiff calls Shirley Charest and David Newman as witnesses.
Plaintiff rests at 1:50 p.m.
Defendant moves for Judgment as matter of law. Court GRANTS 1&2 and DENIES 3&4.
Oral arguments made to the court.
Plaintiff moves to Amend Complaint to conform with evidence. Court DENIES motion to amend.

Defendant calls Timothy Booker as a witness.
Trial recesses to resume at 2:30 on 3/25/02.

Trial resumes at 2:50 on 3/25 with Hon. Justice Donald Marden, presiding. Defendant calls William Thornton, Cindy Booker and Vicki Clewey as witnesses Defendant rests at 4:50 p.m.
Plaintiff recalls Jody Newman as rebuttal witness.
Plaintiff rests finally at 5:20 p.m.

Plaintiff to file brief within 15 days. Defendant to file response within 10 days. Plaintiff to file response within 5 days. |
| 4/9/02 | Plaintiff's Written Closing Argument, filed. s/Farnsworth, Esq. |
| 4/24/02 | Defendant's Closing Arguments, filed. s/McVeigh, Esq. |
| 4/30/02 | Plaintiff's Rebuttal to Defendant's Closing Argument, filed. s/Farnsworth, Esq. |
| 5/13/02 | Letter from Susan Farnsworth enclosing a corrected copy 1st page only. |
| 8/1/02 | DECISION AND ORDER, Marden, J.
     Judgment for plaintiff on count III of her complaint in the amount of $4,800; judgment for the plaintiff on count VI of her complaint for $40; judgment for the plaintiff on defendant's counterclaim; plaintiff to recover her costs.
Copies mailed to attys. of record
Copies mailed to Garbrecht Law Library, Deborah Firestone and Donald Goss

Notice of removal of exhibits mailed to attys. of record. |