# Imported Car Center, Inc. v. Dorothy & Robert Billings

[653 A.2d 765]

No. 92-407

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed October 28, 1994

Motion for Reargument Denied December 14, 1994

*Mary G. Kirkpatrick* of *Lisman & Lisman,* Burlington, for Plaintiff-Appellee.

*Richard R. Goldsborough* of *Jarvis & Kaplan,* Burlington, for Defendants-Appellants.

**Gibson, J.** Defendants Dorothy and Robert Billings appeal from the trial court's denial of their motion for a new trial. We affirm.

In May 1989, Dorothy Billings was discharged from her employment as office manager and bookkeeper for plaintiff Imported Car Center, Inc. (ICC). In June, ICC brought suit against Billings, alleging that she had misappropriated ICC funds and converted them to her own use. Billings counterclaimed for unjust discharge and denial of employee benefits promised by ICC. In connection with its lawsuit, ICC attached property owned by defendant in the Town of Milton. Subsequently, defendant transferred the property to herself and her husband, Robert Billings, as tenants by the entirety. In response, ICC amended its complaint to add Robert Billings as a party defendant, alleging that defendants had acted fraudulently in transferring the property, to the hindrance of plaintiff's rights against Dorothy Billings.

Prior to trial, plaintiff deposed Dorothy Billings. At the time, Billings was under criminal investigation for embezzlement of funds from plaintiff, and she responded to questions concerning her management of funds with an invocation of the Fifth Amendment. By the time the civil trial began, Billings had been charged with the crime of grand larceny.

The civil case was tried in stages. In phase one, the jury returned a verdict against Dorothy Billings in the amount of $90,555: $26,795 on account of misappropriated funds and $63,760 for consequential damages. In phase two, the jury awarded ICC $80,000 in punitive damages on account of the conversion and found that a fraudulent conveyance had taken place. Defendants moved for a new trial, which the court denied. This appeal followed.

Consideration of a motion for new trial rests within the sound discretion of the trial court. V.R.C.P. 59(a); *Hoague v. Cota*, 140 Vt. 588, 591, 442 A.2d 1282, 1283 (1982). To prevail, defendants must overcome a heavy burden to show that the court abused its discretion. *Sachse v. Lumley*, 147 Vt. 584, 587, 524 A.2d 599, 601 (1987).

Defendants raise six issues on appeal, contending that the trial court erred (1) in allowing the jury to draw an adverse inference from defendant's invocation of the Fifth Amendment; (2) in its instruction that the jury could consider plaintiff's legal expenses in awarding punitive damages; (3) in failing to instruct the jury on issues raised in defendants' counterclaim; (4) in its instruction regarding fraudulent conveyance; (5) in its instruction on the presumed accuracy of the Vermont Property Transfer Tax Return; and (6) in refusing to reduce the award for compensatory damages.

## I.

Defendants' first claim is that the trial court erred in allowing the jury to draw an adverse inference from Dorothy Billings's invocation of the Fifth Amendment while being deposed prior to trial. During cross-examination, plaintiff's counsel referred to the deposition questions, and defendant testified that she had taken the Fifth Amendment in response thereto. Subsequently, over defendants' objection, the court instructed the jury that "you may consider her silence in determining the weight to be given to her testimony, and you may draw from her silence such inferences as you find logically and appropriately follow based on the circumstances of this case." Defendants grounded their objection to this instruction on the Fifth Amendment.

On appeal, defendants argue that V.R.E. 512(a) should have barred the instruction. See V.R.E. 512(a) ("The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom."). Under V.R.E. 1101, the Vermont privilege rules apply to both civil and criminal proceedings. Nevertheless, although the new ground for objection on appeal might have had validity, "[t]he objection to the trial court's charge must . . . relate to the claim of error on appeal." *Palmisano v. Townsend*, 136 Vt. 372, 374, 392 A.2d 393, 395 (1978); see V.R.C.P. 51(b) (party must state distinctly "the matter objected to and the grounds of the objection"). The reason for this requirement is to allow the trial judge to hear the objection and correct the charge before the jury retires, *Grazulis v. Curtis*, 149 Vt. 371, 372, 543 A.2d 1324, 1325 (1988), thus reducing the necessity for reversal and retrial. Because defendants failed to make an objection based on Rule 512(a) below, we are precluded from considering it on appeal.

Defendants also contend that comment by plaintiff's counsel in closing argument referring to her exercise of the privilege violated V.R.E. 512(a). Defendants failed to object when plaintiff's counsel referred to Dorothy Billings's use of the Fifth Amendment privilege; therefore, that issue has not been preserved for appeal, and we will not consider it. See *Poulin v. Ford Motor Co.*, 147 Vt. 120, 125, 513 A.2d 1168, 1172 (1986) (issues not objected to at trial will not be considered upon appellate review).

## II.

■ Secondly, defendants contend that the trial court erred in phase two of the trial by instructing the jury that it could consider plaintiff's legal expenses in determining punitive damages. In its instructions, the court stated:

> Included in the harm to plaintiff, you may consider the fact that the plaintiff has been put to trouble and expense in the protection of its interests, as by the cost of legal proceedings in the course of recovering its money.

> When I say that you may consider the extent of the plaintiff's legal fees, I do not mean the plaintiff is entitled to recoupment of its legal expenses. In this country, it is the general rule that each party . . . must pay its own legal fees. . . . Although you cannot award the plaintiff attorney's fees as such, you may consider what the plaintiff has had to spend for legal fees in determining the overall harm done to it by the defendant.

Defendants objected, and on appeal, repeat their objection that the instruction was misleading and erroneous in that it violated the "American rule," under which each party to an action is required to pay its own attorney's fees. See *Gramatan Home Investors Corp. v. Starling*, 143 Vt. 527, 535, 470 A.2d 1157, 1162 (1983) (Vermont follows "American" rule, which requires each party to bear its own costs and attorney fees).

Plaintiff contends that the court was careful to distinguish between an impermissible award of attorney's fees and consideration of legal expenses in restoring plaintiff to the position it would have been in had there been no fraud. See *Cushman v. Kirby*, 148 Vt. 571, 578, 536 A.2d 550, 554 (1987) (defrauded party entitled to benefit-of-the-bargain damages); see also Restatement (Second) of Torts § 908 cmt. e (1979) ("Included in [determination of punitive damages] may be considered the fact that the plaintiff has been put to trouble and expense . . . as by legal proceedings in this or in other suits.").

Considering the instruction as a whole, *State v. Norton*, 147 Vt. 223, 235, 514 A.2d 1053, 1061 (1986), we find that the court was clear in distinguishing an award of attorney's fees from plaintiff's burden of expenses. Rather than inviting a violation of the "American rule," the instructions were a specific attempt to avoid such a result. There was no error.

■ Defendants also argue that malice may not be considered in assigning punitive damages, and therefore, the court erred in in-

structing the jury that it "may properly consider not merely the act itself but all circumstances, including the motives of the wrongdoer." Defendants mistakenly rely on *Lent v. Huntoon*, 143 Vt. 539, 470 A.2d 1162 (1983), for the proposition that malice may not be considered to enhance compensatory damages. Contrary to defendants' assertion, however, "punitive damages may be awarded on a showing of actual malice." *Id.* at 550, 470 A.2d at 1170; see also *Clymer v. Webster*, 156 Vt. 614, 631, 596 A.2d 905, 915 (1991) ("As a general rule, punitive damages are recoverable in any action for damages based upon tortious acts, as long as the unlawful or wrongful acts evinced personal ill will or showed a reckless or wanton disregard of another's rights.") (citation omitted). The court's instruction was not erroneous.

### III.

Defendants also claim that the trial court erred by failing to charge the jury on their counterclaim, which alleged unjust discharge and breach of promises of employment benefits, including stocks, pension and profit-sharing plans. Defendants, however, failed to make a timely objection to the charge, and the claim is therefore waived on appeal. V.R.C.P. 51(b); see *O'Brien v. Island Corp.*, 157 Vt. 135, 141, 596 A.2d 1295, 1298 (1991) ("The failure of plaintiff to object to the absence of an instruction on breach of warranty and strict liability also precludes review by this Court.").

### IV.

Defendants next claim that the court erred in its instructions to the jury regarding fraudulent conveyance. In phase one of the trial, the jury found by a preponderance of the evidence that Dorothy Billings embezzled approximately $27,000 of ICC funds during her employment, and therefore owed ICC a debt in that amount.

Plaintiff alleged that defendant put the funds she had taken into the purchase of a home, then fraudulently conveyed the home from her sole ownership to that of herself and her husband as tenants by the entirety, in an attempt to avoid the debt to plaintiff. As the court instructed the jury in phase two, "[W]here property is held by a married couple as tenants by the entirety, it cannot be levied upon by a creditor to whom money is owed by only one of the owners."

The court further instructed the jury that to prevail on its claim of fraudulent conveyance, plaintiff must prove four elements: (1) defendant Dorothy Billings owed a right, debt, or duty to plaintiff, (2)

defendant conveyed property that was subject to execution in satisfaction of her debt, (3) the conveyance was without fair consideration, and (4) both Dorothy and Robert Billings acted fraudulently to the hindrance of ICC's rights. See 9 V.S.A. § 2281 (fraudulent conveyance shall be null and void against party whose right is attempted to be avoided); *Gore v. Green Mtn. Lakes, Inc.*, 140 Vt. 262, 265, 438 A.2d 373, 374 (1981) (setting forth elements of fraudulent conveyance in case alleging that transfer was made without consideration). The court then charged that plaintiff must prove each element beyond a reasonable doubt. See *Stevens v. Hart*, 134 Vt. 217, 218, 356 A.2d 499, 501 (1976) (using "beyond a reasonable doubt" evidentiary standard for fraudulent conveyance).

As to the existence of a right, debt, or duty, the court reminded the jury that it had already "found that the defendant owed a debt to [plaintiff] of approximately $27,000 in embezzled funds, plus consequential damages." On appeal, defendants claim this instruction erroneously led the jury to believe it had already found the existence of the debt beyond a reasonable doubt. We disagree.

The evidentiary standard necessary for a verdict was clearly stated twice in the instructions. After discussing each element of the claim, the court told the jury that "[i]f plaintiff has proved all of the essential elements of fraudulent conveyance beyond a reasonable doubt . . . you should find for the plaintiff. If not so satisfied, you should find for the defendants." Moreover, the interrogatory submitted by the court to the jury stated, "Do you find beyond a reasonable doubt that there existed a right, debt or duty owed to the Imported Car Center prior to the conveyance or transfer of the property in question?" To this question, the jury checked "Yes." These instructions were clear and unambiguous. We find no error.

## V.

■ Defendants contend that the court erred in instructing the jury that the property tax form defendants executed was entitled to a presumption of accuracy. The form, signed by defendants under oath, stated that the conveyance of the house from Dorothy Billings to her husband and herself as tenants by the entirety was without consideration. Lack of consideration is one element of plaintiff's case. *Gore*, 140 Vt. at 265, 438 A.2d at 374. As proof that no consideration was exchanged for the conveyance of Billings's house, plaintiff submitted Billings's property tax form into evidence.

Information contained on a property tax return made under oath on the personal knowledge of the signatory is entitled to a presumption of accuracy, *Becker v. Becker*, 138 Vt. 372, 377, 416 A.2d 156, 160 (1980), but the "presumption raised by the tax return information on the issue of consideration may be fairly rebutted." *Id.* Here, Dorothy Billings testified only that her husband had given money to her for the real estate purchase. The weight and credibility of the rebuttal evidence is a matter for the jury. The court's instruction was not error.

## VI.

Finally, defendants claim the jury's verdict on compensatory damages was not supported by the evidence. In phase one of the trial, the jury awarded plaintiff $90,555 in compensatory damages. Of that amount, $26,795 was reimbursement for embezzled funds and $63,760 was for consequential damages.

Plaintiff submitted to the jury an accounting of the consequential damages, including salaries over a three-year period of employees who examined and analyzed ICC books, costs of outside consultants, and expert witnesses. Defendants argue that this evidence supports a finding of only $50,986 in consequential damages, and that the additional $12,774 is unexplained and therefore unsupported by the evidence.

■ Unless grossly excessive, this Court will not interfere with an award of damages where exact computation is impossible. *Lent*, 143 Vt. at 553, 470 A.2d at 1172. Plaintiff claims that the initial finding of damages was not a "fixed" number, that plaintiff continued to incur expenses throughout the trial, and therefore, the exact amount of damages could not be ascertained. The court's instructions to the jury indicate that the jury was permitted to consider "out-of-pocket losses, i.e., the money taken by Dorothy Billings . . . [and] the amount of any further monetary loss which was caused by the conversion . . . and . . . interest from the time of the conversion," which the court fixed at twelve percent. In arguing that the award was excessive, defendants overlook the factor of interest on the $50,000, which could account for nearly all the "unexplained" amount of the award. We conclude that the award was within the evidence.

Taking each of defendants' issues in turn, we find no error and therefore no abuse of discretion in the court's denial of the motion for a new trial.

*Affirmed.*

## On Motion for Reargument

■ Defendant filed a motion to reargue on November 10, 1994, arguing that the Court failed to address her argument that the trial court's instruction—the jury may consider defendant's invocation of her Fifth Amendment privilege and the inferences that follow— amounted to plain error. It is not clear whether plain error is ground for reversal in civil cases. Compare V.R.Cr.P. 52 (addressing both harmless and plain error) with V.R.C.P. 61 (addressing only harmless error). But see *Varnum v. Varnum*, 155 Vt. 376, 382-87, 586 A.2d 1107, 1110-13 (1990) (reviewing issue not raised below where fundamental rights and interests were at stake in civil case).

■ Even if plain error applies in civil cases, this is not the exceptional case that requires reversal to prevent a miscarriage of justice. Independent of defendant's refusal to testify, there is ample evidence in the record before us that defendant mishandled plaintiff's funds. Consideration of defendant's silence did not cause a miscarriage of justice; we therefore decline to reverse on this basis. Cf. *Varnum*, 155 Vt. at 387, 586 A.2d at 1113 (consideration of defendant's religion in determining custody of children did not cause miscarriage of justice).