2007 VT 83

# Lamell Lumber Corporation v. Newstress International, Inc.

[938 A.2d 1215]

No. 05-567

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and DiMauro, D.J., Specially Assigned**

Opinion Filed August 31, 2007

*Lisa B. Shelkrot* and *Clara F. Gimenez* of *Langrock Sperry & Wool, LLP*, Burlington, for Plaintiff-Appellee.

*Carrie J. Legus* of *Legus and Bisson PLC*, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Plaintiff Lamell Lumber Corp., a lumber wholesaler and retailer based in Essex Junction, Vermont, entered into a contract with defendant Newstress International, Inc., a New Hampshire corporation, requiring defendant to fabricate a number of precast concrete panels and to "design, manufacture, truck, and erect these components" into a concrete kiln for plaintiff to use in the drying of lumber. After the kiln was completed, plaintiff detected an increasing number of cracks and holes in the concrete, which resulted in this lawsuit against defendant for breach of contract, breach of implied warranty, and negligence.[1] The jury returned a special verdict in favor of plaintiff, finding defendant to be liable on all three counts, and awarded damages of $100,000. On appeal, defendant contends the trial court erred in: (1) exercising subject matter jurisdiction despite the presence of an arbitration clause in the contract; (2) failing to dismiss the action as untimely under the four-year statute of limitations applicable to the sale of goods; (3) submitting the negligence claim to the jury; (4) instructing on damages; (5) excluding the testimony of defendant's expert witnesses; and (6) imposing sanctions against defendant. We affirm.

¶ 2. The basic facts may be briefly summarized. Additional material facts will be set forth in the discussion which follows. In November 1993, the parties entered into a contract calling for defendant to "design, manufacture, truck, and erect" a number of precast, prestressed concrete panels into a structure to be used by plaintiff as a kiln for drying lumber at its mill in Essex Junction. The kiln was completed in late 1993 or early 1994.

---

[1] The original complaint did not include a claim for negligence, but the court granted plaintiff's subsequent motion for leave to add the count. The original complaint also included a claim for consumer fraud, but the court granted summary judgment in favor of defendant on this count, and plaintiff has not appealed from the ruling.

Although the parties dispute the extent of defendant's participation in the design of the project, plaintiff adduced evidence at trial that defendant designed the concrete panels, the panel connections, the arrangement and location of the insulation materials inside the panels, and the building footings.

¶ 3. Plaintiff first noticed cracks in the kiln and reported them to defendant in the spring of 1998. Efforts over the next several years to repair the disintegrating concrete were unsuccessful, resulting in the filing of this lawsuit in April 2003. Following a series of pretrial motions, discussed more fully below, the case proceeded to trial in October and November 2005. Plaintiff's engineering expert, David Mitchell, testified that the building had not been properly designed to withstand the heat of the kiln, and that the deterioration of the concrete was caused by the improper arrangement of the insulation blocks inside the concrete panels and the improper connection of the panels to each other. As noted, the jury returned a special verdict in favor of plaintiff, awarding damages of $100,000. This appeal followed.

I.

¶ 4. Defendant first claims that the superior court lacked subject matter jurisdiction over this action. The basis of the claim is a clause in the parties' contract providing that all disputes arising out of the agreement shall be decided by arbitration. Although defendant raised the arbitration clause as an affirmative defense in its answer to the complaint, filed in June 2003, it proceeded to actively litigate the case over the next two years, responding to plaintiff's discovery requests and propounding requests of its own, attending depositions and other court proceedings, scheduling and canceling a mediation, and seeking several continuances of the jury draw. In early July 2005, however, about one month before trial was scheduled to commence, defendant filed a motion for summary judgment, arguing that the arbitration clause in the agreement deprived the court of subject matter jurisdiction and "estopped" plaintiff from pursuing its claims. Although plaintiff's counsel thereafter agreed to submit to arbitration, defendant rejected the offer on the ground that "any effort on the part of [plaintiff] to initiate arbitration at this time on its claims would be time-barred." Plaintiff thereupon filed an opposition to the motion, disputing defendant's claim that the court lacked subject matter jurisdiction and arguing that, by

actively engaging in the litigation process for over two years, defendant had waived the arbitration agreement.[2]

¶ 5. The court issued a decision in October 2005, rejecting defendant's claim that it lacked subject matter jurisdiction and agreeing with plaintiff that defendant had waived the right to arbitration. Defendant contends the court erred, arguing that where, as here, a dispute is subject to an arbitration agreement, the Vermont Arbitration Act, 12 V.S.A. §§ 5651 to 5681 (VAA) confines the court's jurisdiction to certain statutorily defined proceedings and excludes civil actions based on the contract. As explained below, the claim is unpersuasive.

■ ¶ 6. "Subject matter jurisdiction" refers to the power of a court to hear and determine a general class or category of cases. See *In re B.C.*, 169 Vt. 1, 7, 726 A.2d 45, 49 (1999) (noting that family court "possessed subject matter jurisdiction over the general type of controversy before it"). In Vermont, the superior court is broadly vested with "original and exclusive jurisdiction of all civil actions," subject to certain specific exceptions not applicable here. 4 V.S.A. § 113. While the scope of authority of a court of limited jurisdiction — such as the Vermont family court — is "strictly construe[d]," *Office of Child Support ex rel. Lewis v. Lewis*, 2004 VT 127, ¶ 7, 178 Vt. 204, 882 A.2d 1128, the opposite is true of courts of general jurisdiction such as the superior court. For "courts of general jurisdiction . . . the presumption is that they have subject matter jurisdiction . . . unless a showing is made to the contrary." 13 C. Wright, et al., Federal Practice & Procedure § 3522, at 60 (2d ed. 1984). See also *KBR Rural Pub. Power Dist. v. Kidder*, 128 N.W.2d 687, 689 (Neb. 1964) (observing that Nebraska district court "is a court of general jurisdiction and, as such, its powers are liberally construed in favor of vesting jurisdiction") (citation omitted); *Thompson v. City of Atlantic City*, 921 A.2d 427, 439 (N.J. 2007) (noting the general principle that "subject matter jurisdiction is presumed for courts of general jurisdiction unless proved otherwise"); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) (because it is a court of general jurisdiction "all claims are presumed to fall within the jurisdiction of the [Texas] district court unless the Legislature or Congress has provided that they must be heard elsewhere").

---

[2] We note that defendant has retained new counsel on appeal.

■ ¶ 7. Notwithstanding its presumptively broad jurisdiction, defendant asserts that the superior court here lacked subject matter jurisdiction over plaintiff's contract and negligence claims as a result of the arbitration clause in the contract. Defendant relies on the VAA section authorizing the superior court to issue nine specific orders in relation to an agreement to arbitrate, including orders to compel arbitration, appoint arbitrators, confirm or vacate an arbitration award, and enter judgment on an award. 12 V.S.A. § 5671. Defendant claims that § 5671 effectively limits or "demarcates the parameters of the superior court's jurisdiction" and by implication divests the court of other authority. However, the superior court is presumed to retain jurisdiction over all civil actions unless the Legislature has clearly indicated to the contrary. Contrary to defendant's assertion, we find nothing in the language of § 5671 or the VAA as a whole that suggests a legislative intent — implied or otherwise — to "oust" the superior court of general jurisdiction over a civil suit arising from a contract containing an arbitration agreement.

¶ 8. Apart from the absence of any clear evidence of legislative intent, defendant's argument also lacks support in case law or other authority. Indeed, jurisdictional claims similar to defendant's have been uniformly rejected in other states. See, e.g., *Multi-Service Contractors, Inc. v. Town of Vernon*, 435 A.2d 983, 985 (Conn. 1980) (reversing trial court's ruling that it lacked subject matter jurisdiction where agreement contained arbitration clause and holding that arbitration proceeding was not a "condition precedent" to court action); *JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945, 949 (Ind. Ct. App. 1992) ("JKL cites no authority, and we can find none, to support its claim that a party's failure to arbitrate divests a trial court of jurisdiction over a breach of contract claim."); *Hanslin Builders, Inc. v. Britt Dev. Corp.*, 445 N.E.2d 188, 190 (Mass. App. Ct. 1983) ("It is well settled that a clause providing for the resolution by arbitration of disputes arising under an agreement is not jurisdictional . . . .") (citations omitted); *Campbell v. St. John Hosp.*, 455 N.W.2d 695, 697 (Mich. 1990) (holding that trial court was not deprived of subject matter jurisdiction over medical malpractice dispute subject to arbitration agreement); *State ex rel. Barden & Robeson Corp. v. Hill*, 539 S.E.2d 106, 108 (W. Va. 2000) (observing that "an agreement to arbitrate a dispute does not divest a court of subject matter jurisdiction").

¶ 9. In further support of its claim that the arbitration agreement was jurisdictional — and therefore could not be voluntarily waived — defendant cites a section of the VAA providing that a written arbitration agreement "creates a duty to arbitrate, and is valid, enforceable and irrevocable." 12 V.S.A. § 5652(a). As that section implies, Vermont law and public policy strongly favor arbitration as an alternative to litigation for the "efficient resolution of disputes." *Springfield Teachers Ass'n v. Springfield Sch. Dirs.*, 167 Vt. 180, 183, 705 A.2d 541, 543 (1997). An arbitration agreement, however, remains a creature of *contract* reflecting a voluntary agreement between the parties and as such may be waived by the parties. See *Gates v. Gates*, 168 Vt. 64, 72, 716 A.2d 794, 800 (1998) (holding that courts cannot order parties to submit to arbitration absent a voluntary agreement between the parties or a statute authorizing such an order); *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 6, 580 A.2d 971, 974 (1990) ("There is no question that a party to a contract may lose the right to assert a term of the contract, or to require performance of a part of the contract, by waiver or estoppel.").

¶ 10. Although we have not previously addressed this precise issue, numerous decisions from other jurisdictions have endorsed this view. See, e.g., *Shahan v. Brinegar*, 390 N.E.2d 1036, 1041 (Ind. Ct. App. 1979) (holding that the "right to require . . . arbitration, as in the case of other contractual matters, may be waived by the parties where they fail to request arbitration"); *Dufrene v. HBOS Mfg.*, 872 So. 2d 1206, 1211 (La. Ct. App. 2004) (despite statutory provision that arbitration agreement is "irrevocable," a party's "conduct can effect a waiver of its right to demand arbitration") (citation omitted); *Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc.*, 532 N.E.2d 681, 683 (Mass. 1989) ("The right to arbitration may be lost, as any contractual right which exists in favor of a party may be lost through a failure properly and timely to assert the right.") (quotations and citation omitted); *Carolyn B. Beasley Cotton Co. v. Ralph*, 59 S.W.3d 110, 113 (Tenn. Ct. App. 2000) ("In general, even in those jurisdictions where a contract for arbitration is irrevocable, the right to arbitrate under a contract may be waived . . . .") (citation omitted); *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 533 (Tex. App. 2007) ("As with any contractual right, a party may waive its right to arbitration.") (citation omitted); *Barden*, 539 S.E.2d at 110-11 (observing that "[a]n arbitration agreement is nothing more

than a contractual arrangement for resolving disputes by means other than court-supervised litigation" and as such may be waived). See generally J. Smith, Annotation, *Defendant's Participation in Action as Waiver of Right to Arbitration of Dispute Involved Therein,* 98 A.L.R.3d 767 (1980).[3]

¶ 11. Accordingly, we discern nothing in the VAA or other authority to support the claim that the arbitration agreement could not be waived as a matter of law, or to invalidate the trial court's finding that defendant's active participation in the litigation process and failure to assert the arbitration agreement in a timely fashion resulted in a waiver. The waiver issue is generally held to be a question of fact to be resolved under the circumstances of each case, considering such factors as the timing of the request for arbitration, the extent to which the party seeking arbitration has participated in the judicial process, and whether the party

---

[3] Although defendant contends that the VAA is more restrictive of the court's jurisdiction than either the Federal Arbitration Act or the Uniform Arbitration Act, and that decisions from other jurisdictions are therefore distinguishable, we find nothing in either the VAA or the federal or uniform acts to support the claim. Nevertheless, we need not, and do not, rely on federal law to conclude that the VAA did not divest the superior court of jurisdiction or preclude its finding that defendant waived the arbitration agreement. Defendant also relies on several out-of-state decisions, but careful examination shows that they do not support its position. Defendant cites *Hughley v. Rocky Mountain Health Maintenance Organization, Inc.,* 927 P.2d 1325 (Colo. 1996), and *Burkhart v. Semitool, Inc.,* 5 P.3d 1031 (Mont. 2000), for the proposition that a valid arbitration agreement divests trial courts of jurisdiction over issues subject to arbitration. Both cases, however, simply hold that the court lacks jurisdiction once the matter has proceeded to arbitration. See *Hughley,* 927 P.2d at 1330 (court is divested of jurisdiction "pending the conclusion of arbitration"); *Burkhart,* 5 P.3d at 1035 (holding that court lacked jurisdiction to consider merits of claim after defendant had moved to compel, and defendant had accepted, arbitration). Both Colorado and Montana courts adhere to the view that arbitration is a contractual right that may be waived by the parties. See *Peterman v. State Farm Mut. Auto. Ins. Co.,* 961 P.2d 487, 493 (Colo. 1998); *Stewart v. Covill & Basham Constr., LLC,* 75 P.3d 1276, 1278 (Mont. 2003). Defendant's reliance on *Bloch v. Bloch,* 693 A.2d 364 (Md. Ct. Spec. App. 1997), and *Teltech, Inc. v. Teltech Communications, Inc.,* 115 S.W.3d 441 (Mo. Ct. App. 2003), is also misplaced. *Bloch* holds merely that the Maryland arbitration law confines the court's jurisdiction in suits to compel arbitration to the question of the validity and scope of the arbitration agreement, and in fact recognizes that the right to arbitrate may be waived. 693 A.2d at 367-68. *Teltech* holds unremarkably that jurisdiction under the Missouri arbitration statute is governed by the place specified for arbitration in the agreement, and that if the clause provides for arbitration in a different state then Missouri courts lack jurisdiction. 115 S.W.3d at 443. None of these decisions supports a different result here.

opposing arbitration has suffered prejudice through the incursion of litigation time, costs, and expenses. See *Home Gas*, 532 N.E.2d at 683-84 (listing factors which court should consider in determining whether arbitration has been waived). Although defendant here argued in its original brief that the VAA barred a waiver of the arbitration agreement as a matter of law, it did not assert that the court's finding was an abuse of discretion under the particular facts and circumstances presented. Therefore, any argument along these lines was waived on appeal. See *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 52, 178 Vt. 244, 882 A.2d 1177 (claims not raised in appellant's original brief will not be considered on appeal).[4]

## II.

¶ 12. Defendant next contends the court applied the wrong statute of limitations in ruling that plaintiff's complaint was timely filed within six years of discovery of the injury under 12 V.S.A. § 511. Defendant argues that the court should have applied the four-year statute of limitations applicable to the sale of goods under Article 2 of the Uniform Commercial Code (UCC), codified at 9A V.S.A. § 2-725(1).[5] Defendant argues that plaintiff's claim was barred by the UCC's four-year statute of limitations. As noted, although the contract here provided for the sale of goods consisting of prestressed concrete slabs, it also called for defendant to "design, manufacture, truck and erect the components," and the trial court concluded that these service aspects of the contract controlled for purposes of determining the correct statute of limitations. See *Congdon v. Taggart Bros.*, 153 Vt. 324, 325, 571 A.2d 656, 657 (1989) (applying six-year statute of limitations of § 511 to action against builder for improper "design and construction" of fireplace); *Union Sch. Dist. No. 20 v. Lench*, 134 Vt. 424, 424-25, 365 A.2d 508, 509 (1976) (in action for breach of contract and negligent "design" of roof by defendant architects "the

---

[4] Although defendant subsequently raised the issue in its reply brief, arguing that its motion for summary judgment to enforce the arbitration clause was in fact timely, arguments raised initially in a reply brief will generally not be considered on appeal. *Montgomery v. Devoid*, 2006 VT 127, ¶ 12 n.1, 181 Vt. 154, 915 A.2d 270.

[5] Defendant raised the issue for the first time in a motion for judgment on the pleadings, filed in late July 2005, within a month of the scheduled trial date.

applicable statute of limitations, whether the action sounds in tort or contract, is 12 V.S.A. § 511").

¶ 13. It is well settled that where, as here, a transaction contains elements of both sales and service, application of the UCC, including the four-year statute of limitations under § 2-725(1), turns on whether the transaction "predominantly," or essentially, relates to goods or services. *Lucien Bourque, Inc. v. Cronkite*, 557 A.2d 193, 195 (Me. 1989). See also *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 747 (2d Cir. 1998) ("To determine whether a contract . . . is governed by the U.C.C., the court must determine whether the dominant factor or essence of the transaction is the sale of the materials or the services.") (quotations and citation omitted); *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002) ("Where . . . a contract provides both for the sale of goods and for the rendition of services, Illinois courts apply the 'predominant purpose' test in determining whether the contract falls within article 2 of the UCC."); *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 553-54 (Ind. 1993) (with mixed contracts for goods and services courts look to the "predominant thrust" of the transaction to determine applicability of UCC); *DeGroft v. Lancaster Silo Co.*, 527 A.2d 1316, 1321 (Md. Ct. Spec. App. 1987) (determination of whether UCC or common law statute of limitations governs transaction turns on whether the sale of goods or the provision of services was the "predominant factor" in the contract). See generally D. Marchitelli, Annotation, *Causes of Action Governed by Limitations Period in UCC § 2-725*, 49 A.L.R.5th 1 (1997); S. Soehnel, Annotation, *Applicability of UCC Article 2 to Mixed Contracts for Sale of Goods and Services*, 5 A.L.R.4th 501 (1981).[6]

¶ 14. In determining the essential or predominant aspect of an agreement, courts typically look to several factors. Foremost among these are the language of the agreement itself and the circumstances of its making and performance. See *Insul-Mark*,

---

[6] We addressed an analogous issue in *DaimlerChrysler Services North America v. Ouimette*, 2003 VT 47, ¶ 9, 175 Vt. 316, 830 A.2d 38, holding that, in an action for the deficiency on a retail installment sales contract, the "hybrid" or combination sales-security agreement "more closely related to the sales aspect of . . . [the] agreement rather than to its security aspect" and was thus "controlled by the four-year [statute of] limitation." (citation omitted).

612 N.E.2d at 555 (courts examine the "terms describing the performance required of the parties" to determine its "predominant thrust"); *DeGroft*, 527 A.2d at 1322 ("Courts have generally looked principally to the language of the parties' agreement and the circumstances surrounding its making in determining the predominant thrust of the transaction.") (citations omitted). As noted, the contract here called for defendant to design the kiln, manufacture the prestressed concrete slabs that formed its sides and roof, and erect these and other components into a concrete kiln. Plaintiff adduced substantial evidence at trial that defendant did, in fact, provide the design for the kiln and the concrete panels, arrange their manner of connection and the placement of the insulating liners inside the panels, and assemble the building on site.

¶ 15. The terms of the contract and the circumstances of its performance thus demonstrate that the purchase and sale of the component materials themselves, while necessary to the project, were incidental to the overall objective of designing, engineering, and erecting the kiln according to the plans provided by defendant. Ample authority supports the conclusion that, in such circumstances, the contract was not subject to the UCC. See, e.g., *Lincoln Pulp & Paper Co. v. Dravo Corp.*, 436 F. Supp. 262, 275 (D. Me. 1977) (contract calling for sale, engineering and construction of heat recovery unit was not subject to UCC); *Care Display, Inc. v. Didde-Glaser, Inc.*, 589 P.2d 599, 605 (Kan. 1979) (contract calling for sale, construction, and design of trade show exhibit was "principally for the rendition of services"); *Smith v. Urethane Installations, Inc.*, 492 A.2d 1266, 1268-69 (Me. 1985) (concluding that the "predominant feature" of a contract that provided for defendant to supply and install insulation was the provision of a service); *DeGroft*, 527 A.2d at 1323 (contract calling for sale of materials and construction of grain silo "predominantly concerned the rendition of services"); *Texas Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 881-82 (Tex. App. 2003) (holding that "essence" of contract for "design, fabrication, and installation" of oil rig modifications was for service, not sale of goods) (quotations omitted). The court's decision to apply the six-year limitation period set forth in 12 V.S.A. § 511 was thus amply supported by the law and the facts, and therefore will not be disturbed.

## III.

¶ 16. Defendant's remaining claims do not require extended discussion. First, defendant contends that the court erred in submitting the negligence claim to the jury, asserting on appeal — as it did at trial — that the evidence failed to demonstrate a tort duty separate from the contractual obligation. Plaintiff adduced substantial evidence to support a theory of liability premised upon defendant's negligent design and construction of the kiln, and we have elsewhere recognized the tort of professional negligence for breach of a duty to exercise reasonable care and responsibility in the design and construction of a project arising out of a contractual commitment. See *Howard v. Usiak*, 172 Vt. 227, 235, 775 A.2d 909, 916 (2001) (observing, in context of action against architect for negligent design, that the duty against which the "negligence standard is applied generally arises from the contractual responsibilities the architect assumed"); *Colgan v. Agway, Inc.*, 150 Vt. 373, 373, 553 A.2d 143, 144 (1988) (plaintiff brought combined action against contractor for breach of contract for failure to construct facility in conformance with contract and negligence in design and construction); *S. Burlington Sch. Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 41-42, 410 A.2d 1359, 1362-63 (1980) (discussing elements of action for "negligent . . . performance of [the] obligation to exercise reasonable skill and care in the design and selection of materials" for school roof). We thus find no error in the court's decision to submit the negligence claim to the jury.[7]

---

[7] In further support of the claim, defendant invokes the "economic loss" doctrine, which generally prohibits recovery in tort for primarily economic losses. *Gus' Catering Inc. v. Menusoft Sys.*, 171 Vt. 556, 558, 762 A.2d 804, 807 (2000) (mem.). See also *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316, 779 A.2d 67, 71-72 (2001) (noting that, despite the general rule, tort recovery for economic loss resulting from professional negligence may be available depending "on whether there is a duty of care *independent* of any contractual obligations") (quotations and citation omitted). Although defendant raises an interesting issue, it was not raised below or addressed by the trial court, and therefore was not preserved for review on appeal. *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 20, 178 Vt. 77, 872 A.2d 292. Nor does this strike us as so exceptional a circumstance that application of the "plain error" doctrine in the civil context is compelled to "prevent a miscarriage of justice." *Imported Car Ctr., Inc. v. Billings*, 163 Vt. 76, 83, 653 A.2d 765, 770 (1994). Apart from any duty sounding in tort, defendant was required by the contract itself to design, construct, and erect the kiln in a reasonably competent

¶ 17. Defendant next contends that the court erroneously instructed the jury that it could award damages for the "reasonable cost of either repairing or replacing" the entire kiln, including the cost of tearing down the building, in view of a contract provision limiting damages to the cost of correcting or replacing any defective or nonconforming material. The provision in question, however, by its terms deals exclusively with the remedies available for "defective materials." Plaintiff adduced evidence at trial that the disintegration of the concrete was, in fact, caused by the improper design or arrangement of the insulation inside the concrete panels and the connections of the panels to each other, not by defects in the materials per se. Thus, the contract provision did not by its terms limit the damages available as defendant contends. Nor, by its terms, did it exclude any potential tort remedies flowing from the negligent design and construction. See *Colgan*, 150 Vt. at 375-76, 553 A.2d at 145-46 (holding that contractual language purporting to limit tort liability for negligent design must be clear and specific). Accordingly, we find no error in the court's instruction.

¶ 18. Defendant next contends that the court abused its discretion in excluding the testimony of three proposed expert witnesses. Under our discovery rules a party may compel its opponent to identify the experts that it intends to call at trial, the subject matter on which the expert is expected to testify, and the grounds for the expert's opinion. V.R.C.P. 26(b)(4)(A)(i). We have held that the trial court has the inherent authority and discretion to enforce the discovery requirements of Rule 26, and that its imposition of discovery sanctions will not be overturned absent an abuse of that discretion. *Greene v. Bell*, 171 Vt. 280, 283, 762 A.2d 865, 869 (2000).

¶ 19. The record here reveals that defendant failed to respond to plaintiff's request to identify expert witnesses, resulting in a court order providing for "[n]o expert disclosure by Defendant after July 11, 2005." Four days after the court's deadline, defendant filed a brief notice indicating an intention to call Chad Phillips, an engineer, as an expert witness "to rebut the conclusions contained in the Richard Servidio report." Plaintiff thereupon moved to preclude the expert based on the untimely

manner, and plaintiff adduced substantial evidence that defendant breached this contractual duty.

disclosure. Defendant filed no response to the motion and failed to supplement the disclosure by August 15, 2005, as permitted by the trial court at a hearing on August 1, 2005. Accordingly, the court issued an order, dated August 23, 2005, that defendant would be precluded from calling expert witnesses.

¶ 20. Defendant asserts that the belated disclosure of Mr. Phillips was justified by plaintiff's disclosure, shortly before the July 11 deadline, of a new expert witness, David Mitchell, propounding new theories of liability. The claim, however, is belied by defendant's own expert-witness disclosure indicating that Mr. Phillips would be called to rebut Richard Servidio, an expert whom plaintiff had disclosed much earlier. Nor does defendant explain or justify its failure to supplement the disclosure with additional information about Phillips' testimony or the names of other experts between the original July 11 deadline and the court's August 23 order. Accordingly, we find no basis to conclude that the court abused its discretion in barring defendant from calling Phillips as an expert witness.

¶ 21. Defendant also claims that the court erred in barring the expert testimony of a licensed engineer, Terry Waite. However, defendant offers no argument to support the claim, and we therefore find no error. In addition, defendant claims the court abused its discretion in precluding Nishan Nahikian, its owner and principal, from testifying as an expert. Mr. Nahikian was identified as a fact witness and ultimately provided extensive testimony at trial. The court refused to allow him to testify as an expert witness based on defendant's failure to identify him as such by the disclosure deadline.

¶ 22. We have recognized that an expert "whose knowledge or opinions are relevant because of his participation in the events giving rise to suit should be treated for discovery purposes as an ordinary witness." *Hutchins v. Fletcher Allen Health Care, Inc.*, 172 Vt. 580, 582, 776 A.2d 376, 379 (2001) (mem.) (citation omitted). Conversely, a defendant whose expert opinion is proffered not as a product of his or her immediate participation in the case but rather as a conventional expert for trial purposes must be disclosed as any other expert. *Id.* Defendant does not argue or attempt to demonstrate here that the expert opinions it sought to elicit from Mr. Nahikian were formed as a result of his participation in the transaction. Defendant

simply asserts that the court erred in barring Mr. Nahikian from testifying as an expert in rebuttal to plaintiff's experts. Accordingly, we find no basis to conclude that the court erred in precluding his expert testimony because of defendant's untimely disclosure.[8]

¶ 23. Finally, defendant disputes the court's award of sanctions against Newstress rather than against defense counsel based on their joint failure to appear at a jury draw scheduled for July 27, 2005. The court imposed a monetary sanction of $4,718.25 against Newstress, consisting of the attorney's fees and costs incurred by plaintiff in attending the jury draw. Defendant summarily "requests that the sanction apply to trial counsel instead" but makes virtually no argument or showing that the trial court either lacked the authority to impose the sanction or abused its discretion in doing so. We have observed that the trial court has inherent authority to impose sanctions when necessary, in its discretion, to protect the integrity of the judicial system or "instill respect in both litigants and litigators for the law and the legal process." *Van Eps v. Johnston*, 150 Vt. 324, 327-28, 553 A.2d 1089, 1091-92 (1988). We find no basis here to conclude that the order imposing sanctions against Newstress was in error, or should be modified.

*Affirmed.*

---

[8] Defendant has appended a hearing transcript to its reply brief in which the trial court indicates that it would consider permitting Mr. Nahikian to testify as an expert on certain subjects if plaintiff had questioned him about those subjects at his deposition, since there would then be no prejudicial surprise. Although defendant asserts that the court forgot this ruling at trial, defendant makes no claim or showing that the testimony it unsuccessfully sought to elicit from Mr. Nahikian at trial was, in fact, disclosed at the deposition.