STATE OF VERMONT

SUPERIOR COURT
ENVIRONMENTAL DIVISION
Docket No. 96-8-16 Vtec

| | |
|---|---|
| Laberge Shooting Range JO | Decision on Motions |

**Decision on Motion to Strike Untimely Notice of Appeal and
Motion to Allow Untimely Appeal**

This matter comes before the Court on the Firing Range Neighborhood Group, LLC's ("Neighborhood Group") "Motion to Strike Untimely Notice of Appeal," filed September 1, 2016, and Laberge & Sons, Inc.'s ("Laberge") "Motion to Allow Untimely Appeal," filed September 19, 2016.

**Background**

Laberge operates an unpermitted firing range ("the Range") in Charlotte, Vermont. In late 2015 the Neighborhood Group, made up of a group of individuals living near the Range, filed a request for a Jurisdictional Opinion with the District #4 Environmental Commission seeking a determination that the Range is a development for the purposes of Act 250. On February 12, 2016, the District Coordinator issued an opinion concluding that the Range is a development subject to Act 250 jurisdiction. Appellant's Reply in Supp. of Mot. to Allow Untimely Appeal, Appendix A. Laberge subsequently submitted a request for reconsideration with the Natural Resources Board ("the Board").

On July 19, 2016, the Board issued a Decision affirming the determination that the Range is subject to Act 250 jurisdiction. Motion to Strike, Exhibit A. The Decision states that "[a]ny appeal of this decision must be filed within 30 days of the date the decision was issued." Id.

On August 2, 2016, the board issued an "Altered" Decision. Motion to Strike, Exhibit C. The opinion was altered only to correct the number of the jurisdictional opinion. Id. at 1 n.1. The Altered Decision also states that "[a]ny appeal of this decision must be filed within 30 days of the date the decision was issued." Id.  From the information before us it appears that the Board issued the Altered Decision *sua sponte*, and not in response to any motion filed by a party.

1

Representatives from Laberge met with their former attorney, who told them that they had until September 2, 2016 to appeal the decision. Mem. in Opp. to Mot. to Strike, Appendix A, B, and C. The Representatives decided to seek new counsel to appeal the decision. Id. Before doing so, they went without counsel to meet with Peter Keibel, a District # 4 Coordinator and the author of the original Jurisdictional Opinion. Id.; Appellant's Reply in Supp. of Mot. to Allow Untimely Appeal, Appendix A. Mr. Keibel informed the Laberge Representatives that the deadline to appeal was September 2, 2016. Mem. in Opp. to Mot. to Strike, Appendix A, B, and C. He did not have either of the Board's Decisions in hand at the time, and would have calculated that date based on the Laberge Representatives' representations regarding when the underlying decision was issued. Neighborhood Group's Opp. to Mot. to Allow Untimely Appeal, Ex. A.

On August 26, 2016, Laberge filed a Notice of Appeal ("NOA") with this Court appealing the Altered Decision. The Neighborhood Group moved on September 1, 2016 to strike the appeal as untimely, and Laberge filed a motion to accept an untimely appeal on September 19, 2016.

## Discussion

The parties' motions raise two overarching issues: whether the Laberge's Notice of Appeal was filed within the appeal deadline; and, if not, whether the Court should allow their untimely appeal. We address these issues in turn.

### I.     Whether the Notice of Appeal was Timely Filed

   a. *The 30-day appeal period runs from the date the original decision was issued.*

The Neighborhood Group argues that the 30-day appeal period runs from the date the original decision was issued on July 19, 2016, putting the appeal deadline at August 18, 2016. Laberge argues that the appeal period runs from August 2, 2016, when the Board issued the altered decision, putting the appeal deadline at September 1, 2016. If Laberge is right, its August 26, 2016 NOA was timely filed; if the Neighborhood Group is right, then the NOA was untimely.

Under the relevant statutes and rules, when the Board issues a decision on Act 250 jurisdiction, a party has 30 days from the date of that decision to file an appeal with this Court. V.R.E.C.P. 5(b)(1); 10 V.S.A. § 8504(a).[1]

---

[1] The legislature recently changed the appeal process for Act 250 Jurisdictional Opinions. Under the procedure in effect at the time the District Commissioner issued the JO in February 2016, a party wishing to appeal that opinion had to file for a reconsideration decision with the Board; the Board's decision could then be appealed

Here, the Board issued two decisions. They are identical, except the second decision adds the word "Altered" to the title and jurisdictional opinion number, changes the jurisdictional opinion number from 2-247 to 4-247, and includes a footnote explaining that the decision is altered only to correct the jurisdictional opinion number.

A three-justice panel of the Vermont Supreme Court held in a non-binding decision that "the issuance of a corrected or amended judgment to correct a technical or clerical error does not restart the time for taking an appeal, which continues to run from the original judgment." Coughlin v. Reynolds, No. 2008-441, slip op. at *1 (Vt. May 29, 2009) (unpub. mem.) (collecting cases). Other courts have applied the same principle. The landmark case is Federal Trade Commission v. Minneapolis-Honeywell Regulator Co., in which the U.S. Supreme Court explained:

> the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

344 U.S. 206, 211–12 (1952).

Laberge cites no legal authority supporting the argument that the appeals clock is reset by a decision amended only to correct minor errors.[2] In addition, it appears that the alteration was made *sua sponte*, and not in response to any motion that may have tolled the appeal period. See V.R.A.P. 4(b) (listing types of motions that toll the appeals period).

Relying on the case law, we agree with the Neighborhood Group that the Altered Decision, identical save for a correction of the jurisdictional opinion number, does not affect the appeal period set by the date the original Decision was issued.

---

to this Court. Effective May 31, 2016, a District Coordinator's jurisdictional opinion is appealed directly to this Court. 2015, No. 150 (Adj. Sess.), §§ 36, 37.

[2] Laberge's efforts to distinguish Coughlin by pointing out that the Altered Decision here indicated the appeal period ran for 30 days from the issuance of the decision, and that the Altered Decision here was issued sooner than in Coughlin go to the question of "excusable neglect," discussed below, and not to when the appeal period expired.

b. *This is not a subject matter jurisdiction issue which may be raised any time.*

Laberge next argues that the underlying issue here is subject matter jurisdiction, citing the familiar proposition that "[i]t is axiomatic that lack of subject matter jurisdiction . . . may be raised for the first time on appeal." Braun v. Greenblatt, 2007 VT 53, ¶ 7, 182 Vt. 29 (quoting Town of Charlotte v. Richmond, 158 Vt. 354, 358 (1992)).

"'Subject matter jurisdiction' refers to the fundamental 'power of a court to hear and determine a general class or category of cases.'" Natural Res. Bd. Land Use Panel v. Dorr, 2015 VT 1, ¶ 14, 198 Vt. 226 (quoting Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83, ¶ 6, 182 Vt. 282). Subject matter jurisdiction "is a concept easy to confuse with the simple authority to act." Id. This is what Act 250 jurisdiction provides— regulatory authority to act. Id. Unlike challenges to subject matter jurisdiction, challenges to Act 250 jurisdiction can be waived if a party fails to make that challenge at the appropriate point in the proceedings. In re Denio, 158 Vt. 230, 234–36 (1992). For that reason, we defer to V.R.E.C.P. 5(b)(1) and 10 V.S.A. § 8504(a) in concluding that a party can waive challenges to Act 250 jurisdiction by failing to appeal within the mandated deadline, and the challenge may not be later resurrected under a general subject matter jurisdiction argument.

We agree, for the above reasons, that the appeal period runs from the date the original decision was issued, and that the appeal period puts a valid limit on challenges to Act 250 jurisdictional opinions. Because the appeal was untimely filed, we next consider whether to grant Laberge's Motion to Allow Untimely Appeal.

II.     **Whether the Court Should Grant the Untimely Appeal**

While an untimely appeal typically requires dismissal, State v. Cichowski, 153 Vt. 650, 650 (1989) (mem.), we "may extend the time for filing the notice of appeal if: (A) the relief is requested by motion filed no later than 30 days after the expiration of the [30-day appeal period]; and (B) the party shows excusable neglect or good cause." V.R.A.P. 4(d)(1) (applicable here through V.R.E.C.P. 5(b)(1)).

As explained above, the 30-day appeal period expired on August 18, 2016. The additional 30-day period to file a motion to extend the period under V.R.A.P. 4(d)(1) ran up to, and included,

4

September 19, 2016, the day that Laberge filed its Motion to Allow Untimely Appeal. The motion was therefore timely filed.

Laberge's motion argues that its failure to appeal within the original 30-day period qualifies under the "excusable neglect" prong of V.R.A.P. 4(d)(1). The reporter's notes to that rule explain that excusable neglect assumes some fault by the movant, and add that the excusable neglect standard is applied "very strictly." Reporter's Notes, V.R.A.P. 4, 2006 Amendment (citing In re Town of Killington, 2003 VT 87A, ¶¶ 17, 19, 176 Vt. 60 (internal office procedure breakdown not excusable neglect as matter of law); Bergeron v. Boyle, 2003 VT 89, ¶ 22, 176 Vt. 78 (lawyer's vacation and internal office procedure breakdown not excusable neglect); In re Lund, 2004 VT 55, ¶ 7, 177 Vt. 465 (mem.) (mistaken reading of rule not excusable neglect)).

Vermont courts look to both Vermont and federal case law in determining when excusable neglect applies, because the state rule is "substantially identical to" the analogous federal rule. Town of Killington, 2003 VT 87A, ¶ 16.

We consider four factors, first set out by the United States Supreme Court, in weighing excusable neglect under a V.R.A.P. 4(d)(1) motion: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." In Re Jim Sheldon Excavating, Inc., No. 54-4-09 Vtec slip op. at 4 (Vt. Envtl. Ct. Jun. 8, 2009) (Wright, J.) (quoting Pioneer Investment Servs. Co. v. Brunswick Associates Ltd. P'ship, 507 U.S. 380, 395 (1993)).

Looking to the first factor, we conclude that allowing this appeal would not be prejudicial. Although the Neighborhood Group contends that its members will be prejudiced by the ongoing noise of the Range, this is not the type of prejudice contemplated by the rule or the case law. Rather, "prejudice generally occurs where, for instance, the opposing party has lost evidence or placed substantial reliance on the judgment or there is an increased potential for fraud or collusion." Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 331–32 (3d Cir. 2012) (citing In re O'Brien Envt'l Energy, Inc., 188 F.3d 116, 127 (3d Cir. 1999)). Similarly, the Advisory Committee Notes to the federal analog to V.R.A.P. 4 define "prejudice" in the context of extending the appeal period as:

some adverse consequence other than the cost of having to oppose the appeal and encounter the risk of reversal, consequences that are present in every appeal. Prejudice might arise, for example, if the appellee had taken some action in reliance on the expiration of the normal time period for filing a notice of appeal.

F.R.A.P. 4, Advisory Committee Notes, 1991 Amendment. Here there is no indication that the Neighborhood Group relied on the judgment or took any other action to its detriment in reliance on the expiration of the appeal period. The first factor therefore weighs in favor of Laberge.

As for the second factor—the length of the delay and its potential impact on judicial proceedings—we note that the appeal deadline was August 18, 2016 and the appeal was filed August 26, 2016. This eight-day period was short and has had no impact on the proceedings aside from those one would expect from having to file a motion to extend the appeal period. The second factor therefore also weighs in favor of Laberge.

The third factor—the reason for the delay—carries the most weight in the excusable neglect analysis. Town of Killington, 2003 VT 87A, ¶ 16.

In part, Laberge filed late due to its former attorney's erroneous calculation of the appeals period. Such a miscalculation by an attorney does not qualify as excusable neglect. Lund, 2004 VT 55, ¶¶ 3, 7 (attorney's mistake in believing that motion to stay entry of judgment pending appeal tolled the running of the 30-day appeal period does not qualify as excusable neglect). This fact weighs in favor of the Neighborhood Group.

Laberge also relied on the District Coordinator's representation that the appeal period ran from the Altered decision, and on the plain language in that Decision stating that the appeal period ran for 30 days from the date it was issued. These facts weigh strongly in favor of Laberge. In considering these facts, we distinguish the cases raised by the Neighborhood Group in arguing that Laberge's reliance on the District Coordinator and the Board's decision was unreasonable. Those cases stand for the proposition that attorneys should not rely on representations by judicial staff regarding the expiration of the appeal period. In re Am. Safety Indem. Co., 502 F.3d 70, 73 (2d Cir. 2007) (reliance on law clerk's representation of deadline was unreasonable); Rezzonico v. H & R Block, Inc., 182 F.3d 144, 151–52 (2d Cir. 1999) (reliance on court clerks' oral

and written representations was unreasonable).[3] Here, however, representatives from Laberge relied on statements made directly by the decisionmakers—the Board and the District Coordinator. The circumstances are more similar to In re Jewish Community of Greater Stowe, No. 15-1-09 Vtec Slip op. at 4–5 (Vt. Envtl. Ct. Mar. 18, 2009) (Wright, J.), where we noted that an appeal period may be extended under the "excusable neglect" exception where the appellant relied on incorrect information provided by a zoning administrator regarding the period to appeal a decision made by a town Development Review Board.

Although Laberge's reliance on the erroneous advice of its attorney is not excusable neglect, we conclude that in light of the consistent, and also misleading, information stated directly in the Board's Altered Decision, and the consistent and misleading information provided by the District Coordinator, this factor also weighs slightly in favor of Laberge.

We see no evidence of bad faith on Laberge's part. The failure to abide by the original Decision's appeal deadline was due to confusion caused by misleading statements in the Altered Decision and by the District Coordinator. Laberge subsequently filed a timely Motion to Allow Untimely Appeal. The fact that the filing was made on the last day of the period prescribed by the rule is not, as the Neighborhood Group contends, evidence of bad faith.[4] This factor therefore weighs in favor of Laberge.

Because all four factors weigh in favor of Laberge, we conclude that their Motion to Allow Untimely Appeal may be granted under the excusable neglect exception.

In so finding, we do not reach the question raised by Laberge of whether the untimely appeal may also be accepted pursuant to 10 V.S.A. § 8504(d)(2)(C) (allowing late appeals where doing otherwise would result in "manifest injustice").

---

[3] In addition, in these cases the putative appellants requested extensions under the "unique circumstances" doctrine, which is different from the "excusable neglect" doctrine at issue here. In American Safety the Court ruled against movants because the "unique circumstances" doctrine had been abrogated by the Supreme Court. 502 F.3d at 73.

[4] The Neighborhood Group cites a federal circuit case for the proposition that even when a party files a motion to extend time to appeal due to excusable neglect within the 30-day timeframe for such a motion, they must show excusable neglect up to the time that motion is filed. Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 330 (3d Cir. 2012). Vermont's rule is worded differently from the federal rule in that case in a way that, as we read it, allows an unconditional 30-day period to file a motion.

## Conclusion

Because the Altered Decision did not alter the appeal period, Laberge's NOA was not timely filed. However, the failure to file on time is the result of excusable neglect. Laberge's Motion to Allow Untimely Appeal is therefore **GRANTED** and the Neighborhood Group's Motion to Strike Untimely Notice of Appeal is **DENIED**.

Pursuant to the enclosed notice, this matter is set for a follow-up status conference. The parties are directed to discuss necessary pretrial activities, such as limited discovery and any further motion practice, and to be prepared to establish a pre-trial schedule at the next conference.

Electronically signed on October 20, 2016 at 2:05 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division